[Civ. No. 1228. Fifth Dist: Jan. 26, 1971.]

CASUALTY INSURANCE COMPANY,
Cross-complainant and Appellant, v.
REES INVESTMENT CO., et al., Cross-defendants and Respondents.

[redacted]

**COUNSEL**

Murphy & Hopper and Frederick E. Hopper for Cross-complainant and Appellant.

Walker, Wright, Tyler & Ward and W. R. Drayton, Jr., for Cross-defendants and Respondents.

## OPINION

**COAKLEY, J.***—In June 1960, Rees Investment Co., herein called "Investment Co.," leased an office building located in San Diego, California, to Casualty Insurance Company, herein called "Casualty," for a term of 20 years. At that time, John H. Rees, herein called "Rees," was the *alter ego* of Investment Co. and the chief executive officer of and a major stockholder in Casualty. In his capacity as chief executive officer, he executed the lease on behalf of Casualty. In August 1962, Rees resigned as an officer of Casualty, sold all of his stock in that company, and severed all connection with it. In November 1965, Investment Co. sold the property then under lease to Casualty to Edwin and Joan Hamlin, herein called "Hamlins," and assigned the lease to the Hamlins. Casualty continued to occupy the leased premises and to make the monthly rental payments called for in the lease to Hamlins until February 1967. At that time, Casualty notified the Hamlins that it rescinded and cancelled the lease, predicating its right to do so upon an alleged conflict of interest on the part of Rees as an officer and shareholder of Casualty and the *alter ego* of Investment Co.

In April 1967, the Hamlins filed an action against Casualty, Rees, Investment Co., and others. As against Casualty the complaint seeks a declaration that the lease is valid and enforceable and seeks the payment by Casualty of the obligations of the lessee under the lease. The complaint seeks various forms of relief as against the other defendants.

In September 1968, Casualty filed a cross-complaint against Rees and Investment Co. The complaint was in three counts, count one being upon the theory of indemnity, count two fraud, and count three for an accounting. A general demurrer filed by cross-defendants, Rees and Investment Co., was sustained.

In December 1968, Casualty filed a first amended cross-complaint, herein called "cross-complaint." The general demurrer of Investment Co. and of Rees, individually, to this cross-complaint was sustained and Casualty was given time in which to plead further. It elected not to do so and, in due course, Rees and Investment Co. moved for a dismissal. The motion was granted, and this appeal from the judgment of dismissal followed.

The ultimate issue is whether Casualty's alleged causes of action are barred by the statute of limitations.

We first consider Casualty's second cause of action, i.e., for fraud. The gravamen of the fraud allegations are that in June 1960, when the lease

---

*Retired Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

was entered into, Rees controlled and dominated both the Investment Co. and Casualty; that the terms of the lease were grossly unfair to Casualty and disproportionately favorable to Investment Co.; that, but for Rees' control and domination of Casualty, the latter corporation would not have entered into the lease; that Rees is guilty of a conflict of interest; that Rees used the lease to obtain a large loan on the building and then sold the property to the Hamlins and assigned the lease.

Undoubtedly recognizing that more than eight years had intervened between the making of the alleged unfavorable lease and the filing of the cross-complaint, and that the three-year statute of limitations (Code Civ. Proc., § 338, subd. 4) would be raised as a bar to its action in fraud, Casualty made certain additional allegations designed to overcome the bar of Code of Civil Procedure section 338, subdivision 4.[1] They included allegations that the interest of the cross-defendants is inimical and in conflict with those of the cross-complainants; that even after Rees relinquished his control of Casualty and until the present he has continued to keep the board of directors of Casualty in the dark as to his earlier fraudulent conduct, i.e., the entry into the lease in 1960; that, because of the control and domination of Casualty by Rees, Casualty had no information or knowledge of the wrongs committed by Rees until on or about January 31, 1967.

No other reason or explanation appears in the cross-complaint for Casualty's failure to discover the conflict of interest and the alleged overreaching by Rees, constituting the latter's alleged fraud.

■ When, as here, it is apparent on the face of a pleading that the time limit of an applicable statute of limitations has run, in order to avoid the bar of the statute it is incumbent upon the pleader to state, *with particularity,* facts, rather than conclusions, which excuse his failure to learn of the fraud within the statutory period. (*Weir* v. *Snow,* 210 Cal.App.2d 283 [26 Cal.Rptr. 868]; *Sides* v. *Sides,* 119 Cal.App.2d 349 [259 P.2d 708].)

The rule is set forth in 2 Witkin, California Procedure (2d ed. 1970) Actions, section 339, pages 1180-1181, in these words: "C.C.P. 338(4) adds the statement (commonly found in fraud statutes of limitation: see 63 Harv. L.Rev. 1217): 'The cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party, of the facts constituting the fraud or mistake.' Literally interpreted, this language would give the plaintiff an unlimited period to sue if he could establish ignorance

---

[1]Code of Civil Procedure section 338, subdivision 4, reads as follows:

"Within three years: 4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

of the facts. But the courts have read into the statute a duty to exercise diligence to discover the facts. The rule is that plaintiff must *plead and prove the facts showing:* (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when he did actually discover the fraud or mistake. Under this rule constructive or presumed notice of knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation (such as public records or corporation books), the statute commences to run."

■ No such facts are alleged in Casualty's cross-complaint. The lease was executed in 1960. In 1962, Rees severed all connections with Casualty, new owners and officers taking over at that time. For three years thereafter, i.e., until the sale of the building and the assignment of the lease to the Hamlins in November 1965, the new owners and new management of Casualty continued to pay the agreed monthly rental regularly to Investment Co. Upon the Hamlins becoming the owners and lessors of the building, they notified Casualty to make the rent payable to them. Casualty did so, regularly, without protest for at least another 15 months, i.e., until February 1967. This was almost five years after the new management had taken over from Rees, were in possession of the leased premises and of the books of the company, and were in a position to discover the facts concerning the lease. At that time, i.e., five years after severing all connection with Casualty, it could not reasonably be said that Rees any longer influenced the action of the company much less that he dominated it. The broad allegation that Casualty had no knowledge of Rees' alleged fraud of 1960, until January 1967, by reason of Rees' domination and control of Casualty does not, in our opinion, meet the requirements of alleging *facts* which might reasonably excuse Casualty's failure to discover the alleged unfair terms of the lease, nor its failure to act in relation thereto within a reasonable time after Rees had severed all connections with Casualty, other than as a landlord to whom Casualty continued to pay rent.

We hold, therefore, Casualty's second cause of action based on fraud is barred by the statute of limitations. (Code Civ. Proc., § 338, subd. 4.)

Again, to avoid the bar of Code of Civil Procedure section 338, subdivision 4, Casualty, in its first cause of action, alleges, upon the theory of indemnification, that if it is held liable to the Hamlins in the latter's suit against Casualty, then Rees and Investment Co. should be held liable to Casualty for the amount that the latter is held liable to Hamlins. It argues further that where indemnification is applicable as a remedy, the statute of limitations does not begin to run until the party to be indemnified, i.e.,

Casualty, has sustained a loss; that whether or not Casualty will sustain a loss will not be determined until judgment is rendered in Hamlins' suit against Casualty.

██ In support of this theory, Casualty relies on Insurance Code sections 1101 to 1106, as establishing liability on the part of Rees and Investment Co. to Casualty. Those sections proscribe certain designated activities on the part of officers of an admitted insurer, such as Casualty.[2] The prohibited acts do not include a lease to the insurer of property owned by an officer. Accordingly, no liability, fixed or contingent, is imposed on Rees or Investment Co. under the statutes relied on by Casualty.

And, contrary to Casualty's assertion, no liability is imposed under the doctrine of implied indemnity as laid down in *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367 [25 Cal.Rptr. 301], or *Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal.App.2d 604 [57 Cal.Rptr. 701], relied on by Casualty. Those cases and the doctrine of implied warranty therein enunciated simply are not applicable to the facts of this case as pleaded in the cross-complaint, and Casualty's assertion that they apply is without merit.

Holding, as we do, that Casualty has failed to state a cause of action by way, either of indemnity or fraud, it is unnecessary to consider Casualty's third cause of action, i.e., for an accounting.

For the same reason, it is unnecessary to consider the merits of the special demurrer filed by Rees and Investment Co.

The judgment is affirmed.

Stone, P. J., and Ginsburg, J.,* concurred.

A petition for a rehearing was denied February 23, 1971, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1971.

---

[2]Thus, absent the approval of the Insurance Commissioner, an officer may not have any interest in a transaction involving the purchase by or sale to the insurer of any property, a loan from the insurer, or the purchase or sale of the assets of the insurer. (See Ins. Code, § § 1101 and 1105.)

*Assigned by the Chairman of the Judicial Council.