[No. B074550. Second Dist., Div. Four. Feb. 2, 1995.]

POLLY PARSONS, Plaintiff and Appellant, v.
EDWARD TICKNER et al., Defendants and Respondents.

1514

## COUNSEL

Neville L. Johnson and D. Victoria LaBrie for Plaintiff and Appellant.

Berry & Cahalan, James H. Berry, Jr., W. Paul Baskett, Neal & Harwell, Robert L. Sullivan, Arthur M. Wilkof and Alan Diamond for Defendants and Respondents.

## OPINION

## VOGEL (C. S.), J.—

### INTRODUCTION

Appellant Polly Parsons appeals from the judgments of dismissal entered upon orders sustaining without leave to amend the general demurrer of respondents Edward Tickner, James Dickson, Edward Tickner, and James Dickson doing business as Tickner Dickson Music, Len Freedman, and Len Freedman doing business as Len Freeman Music (hereafter collectively referred to as the Tickner respondents) to her first amended complaint and the general demurrer of respondent Gretchen L. Parsons to her second amended complaint. We reverse because we find appellant has sufficiently pled her causes of action.

### FIRST AMENDED COMPLAINT—TICKNER DEMURRER

The 17th through 22d causes of action of the first amended complaint alleged against the Tickner respondents are labeled fraud and deceit, breach of fiduciary duty, constructive fraud, breach of oral contract, rescission of oral contract, and conversion. Stripped to their essential parts, those claims can be collectively summarized as follows:

Gram Parsons was a musician and composer of country rock music. In 1972, he entered into an agreement with Edward Tickner and James Dickson to manage his musical career. A company called Wait & See Music was

formed to publish and promote Parsons's music. Parsons was the owner of Wait & See Music; the role of Tickner and Dickson was to collect the royalties due Parsons. Parsons never transferred *any* copyrights for his music to either Tickner or Dickson. Nevertheless, when Parsons died in 1973, Tickner and Dickson wrongfully converted Wait & See and its catalog of Parsons's songs to their own company, "Tickson Music," and proceeded to exploit the Wait & See catalog for their own economic advantage.

Following Parsons's death intestate, probate proceedings were opened on September 20, 1973, in the Los Angeles Superior Court. Parsons was survived by his wife, respondent Gretchen Parsons, and his daughter from a prior marriage, appellant Polly Parsons. Gretchen Parsons was appointed administrator of his estate.

Among the personal property inventoried in the estate were writer's royalty rights for the music composed by Gram Parsons. The royalty rights refer to contracts scheduled in the inventory according to the name of the publisher, the royalty percentage, and the respective catalog of songs. The contracts provide for distribution to the composer (e.g., Parsons) a percentage of the income generated by recording, production, and other uses of the songs in a catalog.

One of the royalty contracts scheduled in the inventory involved songs published by Wait & See. The catalog had 11 songs, and royalty percentages ranged from 37.5 percent to 75 percent.

On December 11, 1985, Gretchen Parsons, individually and as administrator of the estate, entered into a stipulation with Polly Parsons to settle and to resolve all objections to the filing of the first and final accounting and to provide for the closing of the estate and final distribution of assets. The stipulation provided that Gretchen Parsons and Polly Parsons would each receive one-half of all future income from the inventoried royalty contracts, including those published by Wait & See.

The stipulation also provided that any unmarshalled assets, any after-discovered assets, and any assets not shown on the inventory of the estate were distributed to Polly Parsons "as to a 100% interest therein." The stipulation was approved and included in the December 11, 1985, order settling the first and final report in the following terms: ". . . as to any unmarshaled, after-discovered or unknown assets, that is, assets which have not been inventoried in the estate or otherwise shown on the accountings on file, . . . said assets be and hereby are distributed to Polly A. Parsons in their entirety, and Gretchen L. Parsons shall have no interest therein."

The first amended complaint further alleges that Tickner and Dickson concealed the fact that Gram Parsons had never transferred any interest in the Wait & See catalog of songs to them, and instead had falsely represented to Gretchen Parsons and Polly Parsons that they (Tickner and Dickson) were entitled to publish the catalog, subject only to the limited obligation to distribute to the estate and heirs specified royalty payments. Neither Gretchen Parsons nor Polly Parsons became aware of Tickner's and Dickson's unlawful exploitations of the Wait & See catalog until June of 1991 when respondent Freedman, the alleged purchaser of the Wait & See catalog, informed Polly Parsons's attorney that there were no documents or agreements transferring Gram Parsons's copyrighted compositions either to Tickner and Dickson or to him (Freedman).

Thus, it can be seen that the operative allegations of the first amended complaint are: (1) Gram Parsons never transferred any copyrights for the songs contained in the Wait & See catalog to Tickner and Dickson; (2) the Tickner respondents fraudulently concealed from Gram Parsons's estate and heirs, including Polly Parsons, that no transfer had ever occurred; (3) the Tickner respondents falsely represented they were the publishers of the Wait & See catalog and were only obligated to distribute a specified percentage royalty to the estate and heirs; and (4) Tickner and Dickson commercially exploited the Wait & See catalog for their own benefit.

Polly Parsons alleges that the Wait & See catalog is an unmarshalled, uninventoried, and after-discovered asset of Gram Parsons's estate within the terms of the stipulation, so that she has a 100 percent interest therein and the right to receive *all* revenues generated from the promotion of its songs. Polly Parsons seeks a declaration of her ownership to the Wait & See catalog and a return of all earned revenues, royalties, and income received by Tickner, Dickson, and Freedman.

Her first amended complaint further alleged that the Tickner respondents entered into an oral management agreement with Gram Parsons, thereby creating a fiduciary relationship. The complaint asserted Gram Parsons was "particularly vulnerable" to respondents because he was "unsophisticated in business and often intoxicated," a drug addict, and "oblivious to business practices, and relied on others to handle his business affairs." Consistent with her other allegations, Polly Parsons alleged that respondents, in whom Gram Parsons reposed total trust, breached their fiduciary duties by, inter alia, actively concealing from him the true facts of his business affairs and wrongfully appropriating the Wait & See catalog for their own benefit.

As to each cause of action, the Tickner respondents demurred on the grounds of lack of the legal capacity to sue, failure to state facts sufficient to

constitute a cause of action, uncertainty and failure to allege if the management agreement was oral or implied. (Code Civ. Proc., § 430.10, subds. (b), (e), (g).)

### DISCUSSION OF DEMURRER OF TICKNER RESPONDENTS TO FIRST AMENDED COMPLAINT

■ In reviewing the sufficiency of the complaint against the Tickner respondents' demurrer, we must treat the demurrer as admitting all allegations of the complaint as true. As it is settled law that in evaluating the sufficiency of a complaint against a demurrer a court will consider matters that may be judicially noticed, we will also take judicial notice of the probate proceeding as it was properly noticed by the trial court. (Evid. Code, § 459, subds. (a) & (b).) (*Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790, 796 [117 Cal.Rptr. 305, 527 P.2d 1153].)

"On demurrer, it is not the function of a trial court, or of this court, to speculate on the ability of a plaintiff to support, at trial, allegations well pleaded." (*Meyer* v. *Graphic Arts International Union* (1979) 88 Cal.App.3d 176, 179 [151 Cal.Rptr. 597].) As a reviewing court, we are not bound by the construction of the pleadings by the trial court, but we make our own independent judgment of the sufficiency of the complaint. (*Miller* v. *Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].) Applying these well-settled principles, we shall review the sufficiency of appellant's pleadings.

### I

■ The Tickner respondents generally demurred on the ground that Polly Parsons lacked the legal capacity to sue. They relied on Probate Code section 573, subdivision (a) which had provided that ". . . no cause of action is lost by reason of the death of any person, but may be maintained by . . . the [deceased's] personal representative." They contended that if Polly Parsons's premise that Gram Parsons never transferred the copyrighted compositions contained in the Wait & See catalog to Tickner and Dickson was correct, the catalog was after-discovered and uninventoried property and that the claim for that class of property could only be brought by a personal representative in a supplemental administration. (Prob. Code, §§ 573 and 12252.)[1] Their contention fails because the law no longer requires the appointment of a personal representative.

---

[1] "'Personal representative' means executor, administrator, administrator with the will annexed, special administrator, successor personal representative, or a person who performs substantially the same function under the law of another jurisdiction governing the person's

Prior to the January 1993 hearing on the demurrer, Probate Code section 573, subdivision (a) was repealed and replaced by Code of Civil Procedure sections 377.10 through 377.35 as part of a comprehensive revision of the law pertaining to the survival and continuation of actions belonging to decedents. It is apparent from the record that the parties were totally unaware of this change in the law. This is probably explained by the fact that the demurrer was filed in December 1992 but heard on January 7, 1993, and the repeal of Probate Code section 573 and the adoption of Code of Civil Procedure section 377.10 et seq. became effective January 1, 1993.

These changes in the law were recommended by the California Law Revision Commission because ". . . statutes concerning litigation involving decedents that appeared in the Probate Code were revised on recommendation of the Commission, but related provisions in the Code of Civil Procedure concerning survival and continuation of actions, statutes of limitations, and proper parties have not been subject to comprehensive review." (Revised Recommendation Relating to Annual Report for 1992, Litigation Involving Decedents (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 899.) The enactment of Code of Civil Procedure section 377 et seq. completed the commission's stated objective to "consolidate[] and reorganize[] the existing statutes in a comprehensive fashion." (22 Cal. Law Revision Com. Rep., *supra*, at p. 899.)

■ In the alternative, the Tickner respondents contend that Polly Parsons's claim does not embrace an after-discovered asset because the Wait & See catalog was included in the inventory of the estate. However, they fail to recognize the catalog was scheduled as a "Writer's Royalty rights in . . . musical properties" which provided only for payment of royalty percentages. However, the catalog as such was not inventoried as an asset of the estate. The right to receive a royalty payment from the publisher of the catalog is qualitatively different from the right to receive revenue predicated upon ownership of the catalog. Only the former was scheduled in the inventory; the latter, which is the functional equivalent of owning the songs contained in the catalog, was not. This is perfectly clear from the order for distribution providing for the equal division of the writer's royalty interest between Gretchen Parsons and Polly Parsons and granting Polly Parsons a 100 percent interest in all uninventoried property. Polly Parsons's claim is to the Wait & See catalog of songs, an uninventoried asset of the estate. Therefore,

status"; " '[g]eneral personal representative' excludes a special administrator unless the special administrator has the powers, duties, and obligations of a general personal representative under Section 8545." (Prob. Code, § 58, subds. (a) & (b).)

her claim comes squarely within Code of Civil Procedure section 377.30[2] because she is Gram Parsons's successor in interest with the right to commence and, in this instance, continue the present action.

■ Newly enacted Code of Civil Procedure section 377.10 et seq. must be applied retroactively to this action. ■ There is no vested right in existing remedies and rules of procedure and evidence. "[G]enerally speaking, the Legislature may change such rules and make the changes apply retroactively to causes of action or rights which accrued prior to the change. [Citations.]" (7 Witkin, Summary of Cal. Law (9th ed. 1990) Constitutional Law, § 492, p. 682.) ■ The repeal of Probate Code section 573 and the enactment of Code of Civil Procedure section 377.10 et seq. are procedural only and operate retroactively. Polly Parsons's standing to pursue the claim that the Tickner respondents never obtained an enforceable copyright interest in the Wait & See catalog is now governed by Code of Civil Procedure section 377.10 et seq. In accordance with sections 377.10, subdivision (b), and 377.11, Polly Parsons is Gram Parsons's successor in interest to the Wait & See catalog.[3]

Code of Civil Procedure section 377.32 requires the "person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the decedent's successor in interest" to file an affidavit stating, among other things, that " 'No proceeding is now pending in California for administration of the decedent's estate' " and "[i]f the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest." Literally, this provision does not require that the affidavit be filed as a condition precedent

---

[2]Code of Civil Procedure section 377.30 provides: "A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to Chapter 1 (commencing with Section 7000) of Part 1 of Division 7 of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."

[3]Code of Civil Procedure section 377.10 provides in relevant part: "For the purposes of this chapter, 'beneficiary of the decedent's estate' means: [¶] . . . [¶] (b) If the decedent died without leaving a will, the sole person or all of the persons who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under Sections 6401 and 6402 of the Probate Code or, if the law of a sister state or foreign nation governs succession to the cause of action or particular item of property, under the law of the sister state or foreign nation."

Code of Civil Procedure section 377.11 provides: "For the purposes of this chapter, 'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."

to commencing or continuing the action. However, failure to file the affidavit could possibly subject the action to a plea in abatement. (See, e.g., 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1051 et seq.)[4]

■ The Tickner respondents suggest that Code of Civil Procedure section 377.10 et seq. are limited to small estates under Probate Code section 7660 and nonprobate transfers, e.g., trusts, joint tenancy, etc. They rely on comments in the 1992 Annual Report of the California Law Revision Commission to the effect that small estates and nonprobate transfers involve no administration of the decedent's estate, justifying the commission's recommendation that Probate Code section 573 be repealed and the "successor in interest" provision be enacted. We disagree. Significantly, the affidavit required by Code of Civil Procedure section 377.32 must include information about the status of any closed estates, regardless of the size of the estate, and makes no inquiry regarding nonprobate transfers. Thus, it is patent that the Legislature did not limit these provisions to litigation involving decedents of small estates or nonprobate transfers.

Pragmatically, "[t]he cause of action belongs to the decedent's heirs or devisees on the decedent's death or rightfully passes to a successor in interest who takes property that is the subject of the litigation, e.g., by virtue of a contract provision or account agreement or by operation of law. The proposed law authorizes the successor in interest to bring an action if there is no probate." (Ann. Rep. for 1992, 22 Cal. Law Revision Com. Rep. (1992) p. 900, fns. omitted.) ■ Here, the probate was closed, and it would make no sense to open a subsequent probate for the sole purpose of asserting decedent's cause of action when it has passed to his successor in interest. By allowing Polly Parsons to independently pursue the cause of action she inherited from the deceased, the objective of the Legislature to harmonize the law relating to litigation involving decedents is accomplished. In sum, Polly Parsons has standing to pursue the present action in her capacity as a successor in interest to Gram Parsons.

## II

■ The Tickner respondents generally demurred to the "Seventeenth Cause of Action" through the "Twenty-Second Cause of Action" on the ground that all of them were time barred by Code of Civil Procedure sections 338, 339, 340, and 343, and the doctrine of laches. They now contend, "Even assuming, however, that the three-year (fraud) limitations period applied to

---

[4]In appellant's response to this court's invitation to comment on the applicability of Code of Civil Procedure section 377.10 et seq., she advised that she would comply with section 377.32.

*all six* of Appellant's causes of action, the time for bringing those claims nonetheless would have passed more than *sixteen* years ago, on September 19, 1976 (three years after Gram Parsons' death)." (Italics in original.) In other words, they measure the operative time period from the date of Gram Parsons's death and argue that even if the three-year limitation is applicable, the claim is time barred. Although that analysis is consistent with our view that all of the causes of action are essentially based on claims of fraud, it is defective insofar as it measures the limitation period from the death of Parsons.

Code of Civil Procedure section 366.1 provides that survived causes of action may be commenced before the later of two terms: (1) six months after the person's death, or (2) the limitation period that would have been applicable had the person not died. Here, Gram Parsons died on September 19, 1973, and his probate estate was opened the next day. This action was filed 19 years later. Recognizing the inordinate delay in bringing this action, Polly Parsons has invoked the delayed accrual rule which allows a party to pursue an action that would otherwise be time barred when the injury was not and could not have been reasonably discovered within the operative statute of limitations.

■ "[Code of Civil Procedure section] 338[,] [subdivision (d)] adds the statement . . . 'The cause of action . . . [is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.' Literally interpreted, this language would give the plaintiff an unlimited period to sue if [s]he could establish ignorance of the facts. But the courts have read into the statute a duty to exercise diligence to discover the facts. The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when [s]he did actually discover the fraud or mistake. Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run." (3 Witkin, Cal. Procedure, *supra*, Actions, § 454, pp. 484-485.)

■ The first amended complaint alleged that the causes of action were not discovered or discoverable until June 1991 when Polly Parsons's lawyer wrote Edward Tickner requesting information and documentation regarding the Wait & See catalog and related matters. In response to this inquiry, the Tickner respondents "continued to represent that written agreements existed

and indicated that they would send copies of the agreements to plaintiff's attorney." No documents were sent as promised and respondent Len Freedman "conceded that no documents or written agreements existed transferring said rights and interest."

■ "Two common themes run through the cases applying the discovery rule of accrual. First, the rule is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. In some instances, the cause or injuries are actually hidden, as in the case of a subterranean trespass (*Oakes* v. *McCarthy Co.* [(1968)] 267 Cal.App.2d [231] at p. 255 [73 Cal.Rptr. 127]), the erasure of video tapes held in the sole custody of the defendant (*April Enterprises, Inc.* v. *KTTV* [(1983)] 147 Cal.App.3d [805] at p. 832 [195 Cal.Rptr. 421]), or foreign objects left in a patient's body after surgery (see, e.g., *Ashworth* v. *Memorial Hospital* (1988) 206 Cal.App.3d 1046, 1054-1062 . . .). Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend. . . . [¶] Second, courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule. The rule is generally applicable to confidential or fiduciary relationships. (*United States Liab. Ins. Co.* v. *Haidinger- Hayes, Inc.* (1970) 1 Cal.3d 586 . . . ; see also *April Enterprises, Inc.* v. *KTTV*, *supra*, 147 Cal.App.3d at p. 827.) The fiduciary relationship carries a duty of full disclosure, and application of the discovery rule 'prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure.' (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* [(1971)] 6 Cal.3d [176] at p. 189 [98 Cal.Rptr. 837, 491 P.2d 421].)

"The court in *April Enterprises, Inc.* v. *KTTV*, *supra*, also noted the importance of the relationship between defendant and plaintiff: 'In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant [s]he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance.' (147 Cal.App.3d at p. 831.)" (*Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1614-1615 [265 Cal.Rptr. 605].)

■ The allegations of the first amended complaint and judicial notice of the probate proceeding reveal that the Tickner respondents not only concealed from Gram Parsons's estate, his heirs, and his survivor in interest

the key fact that Gram Parsons had never transferred his catalog of songs to them, but further concealed that fact by falsely representing they were the producers of the catalog, only obligated to distribute specified royalty payments. Given that the Tickner respondents have held themselves out as if they were the producers and have distributed royalty payments in that capacity, it was not unreasonable for either the estate or Polly Parsons to assume they had the right to do so. Obviously, the affirmative conduct of the Tickner respondents in representing themselves as the producers of the Wait & See catalog would induce the belief that they owned the catalog. In the face of the alleged conduct on the part of the Tickner defendants, Polly Parsons has sufficiently pled that she could not have learned of the claims which she now asserts prior to June 1991.[5]

The Tickner respondents argue that because the royalty contracts were inventoried in the estate, Polly Parsons cannot be excused for not having discovered earlier her claim to the Wait & See catalog. They contend that *Casualty Ins. Co.* v. *Rees Investment Co.* (1971) 14 Cal.App.3d 716 [92 Cal.Rptr. 857] is on point and supports their position. Close scrutiny of that case demonstrates the fallacy of respondents' position.

There, the appellate court concluded that the party who had alleged a delayed accrual of its fraud claim in regard to a commercial lease had been in possession of both the leased premises and the pertinent business records so that it had been in a position to discover the facts concerning the lease had it exercised reasonable diligence. (*Casualty Ins. Co.* v. *Rees Investment Co.*, *supra*, 14 Cal.App.3d at p. 720.)

This pleading deficiency can hardly be applied to this case. Here, Polly Parsons alleged that the Tickner respondents continued their masquerade as producers and owners of the Wait & See catalog. She was not in possession of any "books of the company" or other sources that would have reasonably revealed to her that her father's compositions had not been transferred in accordance with the federal copyright laws. The Tickner respondents have not directed us to any matter in the pleadings or the probate records which could suggest that Polly Parsons had any duty or reason to inquire as to the veracity of their representations. Moreover, their argument that Polly Parsons had continued to receive royalty payments actually undermines their contention that there has been no fraudulent concealment, since their payment of the royalties perpetuated the alleged misrepresentation that they owned the Wait & See catalog.

[5]But for the alleged affirmative conduct of the Tickner respondents, we would find Polly Parsons's allegations wanting since she fails to disclose when and why she had a lawyer correspond with respondent Edward Tickner requesting information and documentation regarding the Parsons catalog of music.

*Watts* v. *Crocker-Citizens National Bank* (1982) 132 Cal.App.3d 516 [183 Cal.Rptr. 304] is instructive on the issue of what is required in a pleading when the plaintiff alleges concealment in order to avoid the bar of the statute of limitations. There, Crocker was the trustee of undeveloped property and in that capacity operated the Miradero Water System. As trustee of the land and water system, Crocker entered into a letter agreement with Dale, an adjoining landowner, to "install, within six months, a 'one-inch water line to supply water'" for Dale's property in exchange for a small parcel that Crocker wanted to settle a boundary dispute. (*Id.* at p. 520.) A pipeline and water meter were installed at Dale's property. Dale did not check it to determine if water was supplied from the line. On several occasions, Crocker spoke with Dale about the pipeline but failed to inform him that it would not be supplying him with water. Crocker specifically failed to inform Dale about a lawsuit with other landowners which had resulted in a settlement giving those landowners the ownership of the system without any obligation to provide Dale with water. Later, Dale sold his property to Costa who discovered that the pipeline was not supplying any water to the parcel. Costa filed an action against Dale and others for fraud. Dale cross-complained against Crocker for damages for breach of contract or, in the alternative, indemnity. Crocker asserted Dale's claim was time barred. (Code Civ. Proc., § 337.)

The trial court concluded that the contract provided for the installation of a pipeline only, not water. From that premise it concluded that the statute of limitations ran from the date of installation and there was no fraud or mistake and, accordingly, Dale's action was barred by the four-year statute of limitations applicable to written contracts.

The Court of Appeal reversed the trial court's ruling. The appellate court concluded that because Crocker had communicated with Dale but had failed to inform him that it was no longer operating the water system and that the settlement of the litigation with other users had both excluded Dale and relieved Crocker from its obligation to provide water, Dale did not *discover* the breach until six years after the installation. The Court of Appeal, citing *Balfour, Guthrie & Co.* v. *Hansen* (1964) 227 Cal.App.2d 173 [38 Cal.Rptr. 525], noted, " '[f]raudulent concealment of the facts is a good answer to the defense of the statute of limitations' [citation] . . . . [¶] It is immaterial that Dale could have checked the pipeline to see if water was flowing through it and, thus, discover the breach. In *Balfour, Guthrie & Co.* v. *Hansen, supra,* 227 Cal.App.2d 173, the court quoted from *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 343 . . . : ' " '[w]here no duty is imposed by law upon a person to make inquiry, and where under the circumstances "a prudent man" would not be put upon inquiry, the mere fact that means of knowledge are open to

a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery.' [Citations.]" ' (*Balfour, Guthrie & Co.* v. *Hansen, supra,* 227 Cal.App.2d 173, 190.)" (*Watts* v. *Crocker-Citizens National Bank, supra,* 132 Cal.App.3d at p. 523.)

Here, there was no duty imposed by law or otherwise on Gretchen Parsons or Polly Parsons to verify the representations of the Tickner respondents that they were the producers of the Wait & See catalog. The Tickner respondents can hardly expect relief from their own deceit because neither the administrator and heirs of Gram Parsons's estate nor their lawyers caught them earlier in a lie. There is no reward for being slick, and *if* Polly Parsons can prove the allegations of the first amended complaint, her claim will not be time barred. The failure to discover the falsity of the Tickner respondents' claim to Parsons's music is as excusable and reasonable as was the failure to discover there was no water in the pipeline in *Watts* v. *Crocker-Citizens National Bank, supra,* 132 Cal.App.3d 516.

It should be emphasized that the delayed discovery rule is applicable to all of the theories of recovery pleaded by Polly Parsons. Her first amended complaint labels her causes of action as fraud, breach of fiduciary duty, and conversion. Although the Tickner respondents claim they owed no duty of disclosure to her, the fact-specific allegations of the complaint suggest they did, both as fiduciaries of Gram Parsons and because they could not pass themselves off as the owners of the Wait & See catalog if they had no lawful rights to Gram Parsons's music. Thus, it has been held that ". . . the date-of-discovery rule is applied to a fiduciary when strict adherence to the date of injury rule would result in unfairness to the plaintiff and would encourage wrongdoers to mislead their fiduciary to delay bringing suit. It is particularly appropriate when the defendant maintains custody and control of a plaintiff's property or interests." (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 827 [195 Cal.Rptr. 421].)

It follows that if the Tickner respondents had no lawful right to the catalog, their conduct did amount to a misappropriation of Parsons's music so that the income generated from its promotion is subject to a constructive trust for the benefit of Gram Parsons's successor in interest, Polly Parsons. Her claims, although delayed for 19 years, are not time barred. The allegations of the first amended complaint sufficiently show that, prior to June 1991, she did not know and, in the exercise of reasonable diligence, could not have discovered that the Tickner respondents had no lawful right to the Wait & See catalog. Furthermore, the fact that Polly Parsons received and accepted royalty payments does not estop her from pursuing this claim. The Tickner respondents cannot claim they are prejudiced by such conduct

inasmuch as, according to the allegations of the first amended complaint, they were paying Polly Parsons less than that to which she was entitled under the ruse that that was all she was entitled to receive.

The Tickner respondents argue that Polly Parsons may not invoke the delayed discovery rule because her original verified complaint contained no suggestion that defendants made any representation concerning their interest in the Wait & See catalog. They rely on *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379 [243 Cal.Rptr. 627] to support their contention that the allegations of the first amended complaint improperly go beyond her initial allegations to avoid the statute of limitations. Specifically, they claim she cannot rely on the current allegations that the Tickner respondents "continued to conceal" relevant facts from the administrator and Polly Parsons because the allegations vary from her earlier accusatory allegations that she was a minor until 1988, her mother was incapable of handling business transactions, and the estate was overburdened with litigation. The argument fails. The allegations of concealment do not contradict and are not inconsistent with the allegations of the original complaint.

In *Owens* v. *Kings Supermarket, supra,* the plaintiff alleged in his original and first amended complaint that the accident occurred on the public street adjacent to the defendant's market. The defendant demurred on the ground that only the city controls public roadways. In his second amended complaint, the plaintiff alleged the accident occurred on the defendant's premises. This obvious sham pleading is wholly different from the situation here. Polly Parsons has supplemented her allegations of her original pleading to explain with particularity why she did not know that the Tickner respondents misrepresented their right to promote and profit from her father's music. An amendment which supplements a pleading with new facts which are neither inconsistent nor contradictory is permissible. Here, the original complaint contains no allegation that the Tickner respondents did not conceal any relevant facts and Polly Parsons is not precluded from alleging concealment when compelled to amend to bring herself within the delayed discovery rule.[6]

### DISCUSSION OF GRETCHEN PARSONS'S DEMURRER TO SECOND AMENDED COMPLAINT

The second amended complaint alleged a cause of action against Gretchen Parsons for declaratory relief based on Polly Parsons's claim that the Wait &

---

[6] In view of our disposition of the appeal based upon application of the delayed discovery rule on the basis of concealment, it is unnecessary to consider the objection that the current allegations that respondents Tickner and Dickson reside outside of California are inconsistent with the allegations of the original complaint.

See catalog is an after-discovered asset belonging to her. She seeks a determination of her right to own and control the catalog. If Polly Parsons prevails on her claims against the Tickner respondents, she will own the songs in the catalog, thereby dissolving the Wait & See royalty contract and possibly terminating any obligation to pay any more royalties to Gretchen Parsons on that contract. Additionally, Polly Parsons seeks to recover the royalty payments, derived from the Wait & See catalog, received by Gretchen Parsons from the Tickner respondents.

In relevant part, the second amended complaint alleges: "Plaintiff seeks declaratory relief for [*sic*] the following: [¶] a. That there are no writer's royalties with respect to Wait & See Music; [¶] b. That Wait & See Music was effectively a fraud and therefore no monies should have been paid to Gretchen Parsons; [¶] c. That it is unclear what royalty and publishing contracts were the subject of the inventory and should be clarified; [¶] d. That BMI compositions were not properly inventoried and plaintiff shall receive 100% of the earnings; and [¶] e. Whether or not the inventory list is exhaustive."

Gretchen Parsons demurred solely on the ground that all of the claims were barred by the terms of the executed mutual release which settled all disputes pertaining to the administration of the probate estate. The mutual release provided that each of them ". . . fully and forever remise, release and discharge the other Party . . . of and from any and all claims, suits, causes of action, obligations, debts, costs, expenses, accounts, damages, judgments, losses and liabilities, whether known or unknown . . . which each Party hereto has or can have by reason of any matter, cause or thing whatsoever, *up to and including the day hereof, relating to or arising out of the administration of the Estate of Gram Parsons . . . .*" (Italics added.) By its terms, the mutual release does not resolve future disputes arising after December 11, 1985, the date the mutual release was executed.

▪ Probate Code section 11605 provides: "When a court order made under this chapter becomes final, the order binds and is conclusive as to the rights of all interested persons." Thus, if, as here, no appeal is taken from the order of distribution, the order is binding upon all interested persons even if the order is mistaken or incomplete. This principle acts to preserve the finality and conclusiveness of such decrees and to guarantee the integrity and stability of the titles to the property embraced in the decrees. (*Estate of Callnon* (1969) 70 Cal.2d 150, 160-161 [74 Cal.Rptr. 250, 449 P.2d 186].) The only manner in which such an order can be attacked is through an action based upon a claim of extrinsic fraud. (*Universal Land Co.* v. *All Persons* (1959) 172 Cal.App.2d 739, 742 [342 P.2d 958].) "Extrinsic fraud is a broad

concept that 'tend[s] to encompass almost any set of *extrinsic* circumstances which deprive a party of a fair adversary hearing.' [Citations.] It 'usually arises when a party . . . has been "deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting [her] claim or defense." . . . [Citations.]' " (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905 [191 Cal.Rptr. 629, 663 P.2d 187]; italics added.) Intrinsic fraud, on the other hand, involves the introduction of perjured testimony or false documents or the concealment or suppression of material evidence in a fully litigated case. (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 634 [99 Cal.Rptr. 393].)

■ Applying these principles to Polly Parsons's claims against Gretchen Parsons, we conclude the following. The release bars Polly Parsons from pursuing any claim against Gretchen Parsons for negligent administration of the estate (e.g., failure to discover the fraud committed by the Tickner respondents). Furthermore, because Polly Parsons has made no claim of *extrinsic* fraud against Gretchen Parsons, she may *not* seek to disgorge from Gretchen Parsons any of the Wait & See Catalog royalties the latter received, because the receipt of those moneys flowed from the order of distribution which has long become final. However, even though the mutual release and final order of distribution bar those claims, they do *not* apply to issues that arise if Polly Parsons validates her claim to the Wait & See catalog as an after-discovered and uninventoried asset of the estate. That is, if Polly Parsons prevails on her claim to the Wait & See catalog, Gretchen Parsons will predictably contest the termination of future royalty payments. Her right to those future payments is the proper subject of a declaratory relief action.

Although Gretchen Parsons has limited the scope of her demurrer by contending the mutual release is a bar to Polly Parsons's cause of action for declaratory relief, we recognize that she does not thereby waive a general demurrer for failure to state a cause of action. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) Accordingly, we have reviewed the second amended complaint to determine if it states a cause of action independently of Gretchen Parsons's specific objection.

Gretchen Parsons notes that the second amended complaint is ambiguous with respect to what royalty contracts are the subject of the declaratory relief cause of action. It is true that the pleading is not a model of clarity, but it is perfectly clear that Polly Parsons is seeking a "determination as [to] whether or not Gretchen Parsons is entitled to any interest in [the] Wait and See compositions or the royalties accruing therefrom and whether Gretchen Parsons should pay back royalties to plaintiff."

The fact that the claims against Gretchen Parsons depend on Polly Parsons's ability to prove her claims against the Tickner respondents is not controlling. "Future rights may be determined when a declaration of the present and actual controversy is dependent on an adjudication of such future rights. [Citation.]" (*Klinker* v. *Klinker* (1955) 132 Cal.App.2d 687, 692-693 [283 P.2d 83].) Here, Polly Parsons is pursuing a claim to establish ownership and control over the Wait & See catalog. As her claim remains to be established, it is a future right to be adjudicated, but it suffices as a premise for a declaration of rights as between Gretchen Parsons and Polly Parsons, both of whom were granted a 50 percent interest in the Wait & See royalty contract.

DISPOSITION

For the foregoing reasons, the orders sustaining the demurrers of respondents herein and the subsequently entered judgments of dismissal are reversed. Appellant shall recover costs on appeal.

Epstein, Acting P. J., and Hastings, J., concurred.