Filed 11/16/15  Isaacson Holdings v. Pourmand CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ISAACSON HOLDINGS, LLC, | B256736 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC096598) |
| v. | |
| EBRAHIM POURMAND, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed.

Gabriel Salomons, Jonathan Gabriel, David S. Mayes and Nathalia B. Fernandez for Plaintiff and Appellant.

National Choice Lawyers and Koorosh K. Shahrokh for Defendants and Respondents.

_____

Isaacson Holdings, LLC sued Ebrahim and Kheirollah Pourmand for reformation of an easement deed and related causes of action. The trial court concluded that the reformation claim was barred by the statute of limitations and that the remaining claims failed because they depended on a reformed easement deed. Isaacson Holdings appeals, and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation over a disputed driveway easement involves the owners of two neighboring properties. The Isaacsons live at 3674 Dixie Canyon Avenue in Los Angeles, and their house is on Lot 13 of Tract No. 10512. Through their company, Isaacson Holdings, LLC, they expanded their property to include Lots 15, 16, and portions of Lot 14 of that tract. The Pourmand property, at 3680 Dixie Canyon Avenue, is owned by Kheirollah Pourmand, and consists of Lots 17 and 18 of the same tract. In 2012, Isaacson Holdings filed suit against the Pourmands. Isaacson Holdings asserted numerous causes of action, but it appears that by the time of trial the remaining claims were for quiet title, reformation of the easement deed, and interference with the easement.

At trial, evidence was presented concerning the history of the two properties and the easement dispute. Neville Isaacson and his wife purchased Lot 13 in 1995. At that time, their neighbors, Irving and Ingeborg Stern, owned the adjacent lots. The Isaacsons wanted to expand their property to build a garden for their children, so they approached the Sterns about purchasing some of their land. In 1998, the Sterns sold Lots 15, 16, and a portion of Lot 14 to the Isaacsons. The Sterns held Lots 17 and 18 in their revocable living trust. According to Isaacson, at the time that the Sterns sold the land to him, they reached an agreement to give each other reciprocal easements so that each could reach his property using a shared driveway. They did not draw up easement documents at that time but agreed to do so in the future.

In November 1998 Irving Stern passed away. In 1999, Isaacson obtained a lot-line adjustment easement from the Stern Trust, which allocated a small portion of land between the respective properties to Isaacson. In July 2000 Ingeborg Stern attempted to

2

execute an easement deed in favor of the Isaacson Trust, but this first deed was defective because it was signed by Stern in her individual capacity rather than in the name of the family trust.

In August 2000 the Stern Trust agreed to sell Lots 17 and 18 to Yoram Algave. The defective easement deed was provided to the escrow agent with the contract of sale. When the name error in the easement deed was discovered, a revised deed correcting that error was prepared and filed in escrow. The revised easement deed described the easement as benefitting Lots 14, 15, and 16, and traveling over Lot 15. The deed should have stated that the easement burdened Lot 18. The map included with the easement deed depicted a driveway on both Lots 15 and 18.

Algave obtained a realtor's determination that this easement did not burden the property he was buying and completed his purchase of the land. Algave testified that when he purchased the property, he had been advised that the driveway leading to his property traveled over Lot 15 and that there was an easement granted to Lot 18 to use the driveway on Lot 15. Algave understood the easement to have "nothing to do with my property." He testified that he had never been told that there was an easement burdening Lot 18 for the benefit of Lot 15. Algave testified that he would never have purchased the property if there was an easement against Lot 18 because it would have prevented him from building on that lot.

Algave rented out the property to a tenant. Algave testified that he had spoken with Isaacson about the disputed easement. According to Algave, his tenant called Algave to report that people were working in the driveway. Algave drove over and spoke with Isaacson. Isaacson told Algave that he had an easement that looped inside Algave's property. Algave responded that there was an easement in the first 20 feet of the driveway on Lot 15, but that there was no easement on Lot 18, and nothing looping inside Algave's property. According to Algave, he advised Isaacson, "You have no easement. You can go back to [the] escrow paper and check it, but there's no easement on there."

3

Isaacson asked for access to his property via Lot 18 for two weeks while he finished a specific construction project. Algave said he could have access for two weeks.[1]

Algave later sold the property to a party who was unable to make the payments on the property, leading to a sheriff's sale in late 2007. Ebrahim Pourmand purchased the property at the sheriff's sale. Ebrahim Pourmand later transferred ownership of the property to his cousin Kheirollah Pourmand, but he held a power of attorney to handle matters relating to the property.

Over time, Ebrahim Pourmand created various obstructions in the area of the disputed easement: a gate, stairs, a concrete block wall, a swing set, and a row of trees. Isaacson did not become concerned until he saw that Ebrahim Pourmand was building an addition to his home in the area of the claimed easement. Isaacson "saw his structure in front, coming out of the ground, and they had the big studs up. And then it appeared that maybe something was wrong." At that point Isaacson reported to the city that Ebrahim Pourmand was building on the easement and brought the easement deed to the city's attention. The city halted construction but permitted it to resume after identifying the error in the easement deed. Isaacson Holdings then sued the Pourmands.

After a court trial, in closing argument, counsel for Isaacson Holdings conceded that its claims turned on the issue of reformation: without reformation, there could be no relief on the other causes of action. Accordingly, the trial court first considered the claim for reformation of the easement deed, which was governed by a three-year statute of limitations. (Code Civ. Proc.,[2] § 338, subd. (d).) The court concluded that the easement

---

[1] Isaacson testified that he never spoke to Algave about the easement. Isaacson said that he used the easement after Algave's purchase of the property during construction from 2001 to 2003. He experienced no difficulty in using the easement at that time; his contractors spoke to Algave's tenants and informed them that they would be using the easement. No one objected to the easement being used at that time, and the tenants moved their cars to permit access. Once the construction was completed, Isaacson no longer used the easement because he had no need to do so. The trial court expressly credited Algave's account over Isaacson's.

[2] Unless otherwise indicated all further statutory references are to the Code of Civil Procedure.

deed was correct in all respects except that it specified that Lot 15, not Lot 18, was burdened by the easement. The court found that Isaacson was placed on reasonable inquiry notice of a possible mistake in the claimed easement in 2000, when Algave, the new purchaser of the adjacent property, disputed Isaacson's assertion of an easement over the property. While Isaacson Holdings argued that Isaacson would not have detected the error in the easement if he had inquired at that time, the trial court concluded that the error was not difficult to identify, as three of the plaintiff's witnesses testified that they easily recognized the problem with the easement deed. Moreover, the court observed that given that an error in the first easement deed had been detected (the misidentification of the owner), Isaacson should have made every effort at the time to ensure that the rest of the document was accurate, but he had failed to act at that time. The court concluded that the failure to do was unreasonable. As Isaacson had been placed on inquiry notice in the year 2000 but failed to inquire into the easement at that time, the statute of limitations had run out long before Isaacson Holdings filed suit, and the reformation cause of action failed.

The court next concluded that without reformation, the easement deed was defective and void, so the remaining causes of action failed as well. The court entered judgment in favor of the Pourmands. Isaacson Holdings appeals.

## DISCUSSION

### I. Sufficiency of the Evidence that the Statute of Limitations Had Run

Isaacson Holdings argues that the evidence is not sufficient to support the trial court's conclusion that the reformation cause of action was barred by the statute of limitations. "'Under the substantial evidence standard of review, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or

5

uncontradicted, in support of the judgment.'" [Citation.] 'All presumptions favor the trial court's ruling, which is entitled to great deference . . . .' [Citation.]" (*In re Estate of Kampen* (2011) 201 Cal.App.4th 971, 992 [italics in original].) Reviewing the evidence in that light, we conclude that the evidence was sufficient to support the trial court's ruling that the statute of limitations had run on the reformation claim.

The statute of limitations applicable to Isaacson Holdings's cause of action for reformation of the easement deed is found in section 338, subdivision (d), which establishes a three-year statute limitations for causes of action based on fraud or mistake. While "[g]enerally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements'" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*)), like many other statutes of limitation section 338, subdivision (d) includes a "'discovery rule,' which postpones [the] accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Id.* at p. 807.) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] *Norgart* [*v. Upjohn Co.* (1999) 21 Cal.4th 383] explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm. [Citation.] In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox*, at p. 807.) A discovery rule, therefore, "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." (*Ibid.*)

Here, section 338, subdivision (d) provides that the cause of action in a case of fraud or mistake "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (§ 338, subd. (d).) "'Literally

6

interpreted, this language would give the plaintiff an unlimited period to sue if [it] could establish ignorance of the facts. But the courts have read into the statute a duty to exercise diligence to discover the facts. . . . Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [its] investigation (such as public records or corporation books), the statute commences to run.' [Citation.]" (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525.)

At trial, evidence was presented[3] that in approximately 2000 Isaacson was placed on notice of an error or other problem concerning his claimed easement that may have resulted in the easement deed not achieving the objective Isaacson had thought it did. When Isaacson attempted to use the claimed easement, Algave, the then-owner of Lots 17 and 18, spoke with Isaacson about it. Isaacson asserted that he had an easement that looped through Algave's property. Algave responded that there was an easement in the first 20 feet of the driveway as it passed across Lot 15, but that there was no easement on Lot 18, and nothing looping inside Algave's property. Algave advised Isaacson to go look at the recorded documents. While not identifying the exact error in the easement deed, Algave's words would have alerted a reasonable listener to what ultimately proved to be the problem: if Isaacson checked the recorded documents, he would find that the deed stated that it burdened Isaacson's property, not Algave's Lot 18. From this evidence, the trial court reasonably concluded that Isaacson had been put on inquiry notice in 2000 that there was a problem with his claim of an easement and that it was possible that the recorded easement did not pass through and burden Lot 18 as Isaacson had believed it did. Substantial evidence supports the trial court's conclusion that at this

---

**3** The Pourmands identify three trial exhibits included by Isaacson Holdings in its appendix that were not listed by the trial court in its list of exhibits admitted into evidence at trial. Isaacson Holdings argues that these exhibits were part of the record and that the trial court's statements indicate that these items were in fact admitted despite their absence from the court's list. Resolution of this dispute is not necessary to our determination of the issues presented by this appeal.

7

point Isaacson had reason to at least suspect that a type of wrongdoing had injured him. (*Fox*, *supra*, 35 Cal.4th at p. 807.) Accordingly, the trial court concluded that the statute of limitations on Isaacson Holdings's reformation claim commenced running at that time, and that it had run out long before the complaint was filed in 2012. (§ 338, subd. (d).)

Isaacson Holdings argues that Algave never put Isaacson on reasonable notice that there was a mistake in the easement deed, but merely disputed the existence of an easement. Considering the evidence in the light most favorable to the prevailing party, however, Algave did not dispute the existence of an easement. He acknowledged the existence of an easement, but disputed its scope. Algave said, "You have [an] easement only [at] the beginning of the driveway, of the first 20 feet" of Lot 15. "That's it," Algave informed Isaacson, "[n]othing to do with [Lot] 18, and nothing looping inside my property." This was not a mere denial that the easement existed but an assertion that the easement did not pass through and burden Lot 18. Algave's advisement to Isaacson was sufficient to support the trial court's conclusion that Isaacson had been placed on inquiry notice in 2000 of the elements of the reformation claim. (See *Fox*, *supra*, 35 Cal.4th at p. 807.)

In the section of its opening brief concerning its claim of insufficient evidence, Isaacson Holdings also presents extensive arguments concerning how easements are created, its alleged satisfaction of its burden to establish an express easement, and the applicable rules of construction for easements. Isaacson Holdings has not demonstrated any respect in which these arguments establish any error in the court's holding that Isaacson was placed on inquiry notice in 2000 of a potential defect in his claimed easement and that the statute of limitations had therefore run out on the reformation claim prior to the commencement of litigation.

Both in its insufficiency of the evidence argument and in the next section of its brief, entitled, "Applicable Statutes of Limitation Do Not Bar Appellant's Claims," Isaacson Holdings argues that the court applied an incorrect, subjective standard to the question of when the error should have been discovered. Isaacson Holdings argues that the court "drew the unreasonable inference that, because [three of its witnesses]

discovered the defect, so should have Isaacson." The court, however, first ruled that the encounter with Algave "placed Isaacson on reasonable inquiry notice." Next, the court acknowledged that Isaacson Holdings argued that Isaacson would not have discovered the problem with the easement if he had inquired after speaking with Algave. The court observed that this contention was refuted by the evidence that several of Isaacson Holdings's witnesses easily detected the error in the easement documentation. Even Isaacson Holdings's expert witness engineer and surveyor, despite saying that he probably would not have noticed the typographical error in the legal description, testified that as soon as one attempted to plot out the easement based on the metes and bounds "it tells you right away that something is wrong." Given that the evidence showed that attempts to plot out the easement would have revealed and did reveal the error, that it was reasonable for the trial court to conclude that if had Isaacson made a timely inquiry into the validity of the easement document, the error would have been discovered.

Also in its briefing on the statute of limitations, Isaacson Holdings reiterates its argument that there was no substantial evidence that Isaacson was placed on reasonable inquiry notice of a defect in the easement deed by speaking with Algave; discusses the evidence concerning Ebrahim Pourmand's construction on Lot 18 and Isaacson's subsequent investigation into the easement; contends that Ebrahim Pourmand's obstructions to the easement did not put Isaacson on notice of an error in the easement deed; and argues that the causes of action did not accrue until Ebrahim Pourmand began construction of his home addition in 2011. Because substantial evidence supports the court's ruling on the statute of limitations with respect to the reformation cause of action, the limitations period for reforming the defective easement had expired before Ebrahim Pourmand ever purchased the property, and his obstructions and construction work are not relevant to the issue on appeal.

Isaacson Holdings also argues that its quiet title claim was timely because it was brought within three years of the discovery of the facts giving rise to the cause of action, and that the cause of action to enforce an easement did not accrue upon the conversation between Algave and Isaacson. The court, however, did not rule that the quiet title and

9

enforcement/trespass causes of action were barred by the statute of limitations, but that they failed because there was no valid easement deed. As Isaacson Holdings's counsel conceded at trial, its additional causes of action were dependent on the successful reformation of the easement deed. Because the statute of limitations had run on the reformation claim, the court ruled, the deed could not be reformed; and without a reformed deed, these remaining causes of action necessarily failed. Isaacson Holdings has not addressed, let alone established any error in, the court's ruling that the quiet title and interference causes of action could not survive absent a reformed easement deed. When a trial court clearly relies on a stated rationale for its ruling, the party challenging that ruling fails to rebut the presumption of correctness if it does not make some effort to address that rationale on appeal. (See *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [appellant bears the burden of affirmatively demonstrating error, and the trial court's order is presumed to be correct on appeal].)

At the conclusion of its statute of limitations briefing, Isaacson Holdings asserts that the trial court was unreasonable in its "interpretation of the evidence" when it concluded that Algave granted Isaacson access to his property for only two weeks in 2000 to complete a construction project. Isaacson Holdings also argues that it was "unreasonable" for the trial court "to infer that this alleged grant of permission to use Algave's land occurred immediately after Algave's express denial of the existence of any easement. This conclusion was illogical, and unsupported by substantial evidence." Algave, however, testified that he consented to Isaacson accessing his property by means of this route for two weeks at the time that they spoke about the easement issue, and the court ruled that Algave's testimony regarding this conversation was more credible than Isaacson's. We defer to the trier of fact on issues of credibility. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) The court's factual conclusions, therefore, were supported by substantial evidence. Isaacson Holdings has not demonstrated any error by the trial court.

10

## II. Denial of the Request to Amend the Complaint

After the trial had concluded and the court had issued its proposed statement of decision, Isaacson Holdings filed objections to that statement of decision in which it requested that the court amend the complaint to conform to proof and hold that Isaacson Holdings had proven an easement by necessity. The court noted that the portion of the Isaacson property to which the disputed easement connected was not without other means of ingress and egress, and it denied the requested amendment because issues of necessity were not before the court at the trial and an amendment at such a late state of the trial, given the state of the evidence, would have prejudiced the defendants. Isaacson Holdings argues that this was error because it had presented evidence at trial concerning alternative means of access to the Isaacson property and the costs associated with such access. It asserts that the amendment adds no new facts whatsoever, arises from the same general allegations of the complaint, and is based upon the evidence adduced at trial, so the defendant would not have been prejudiced at all.

"A trial court may allow the amendment of a pleading at any time up to and including trial. [Citations.] Leave to amend to conform to proof at trial ordinarily is liberally granted unless the opposing party would be prejudiced by the amendment. [Citation.] Leave to amend a pleading at trial is properly denied, however, if the proposed amendment raises new issues that the opposing party has had no opportunity to defend. [Citation.] The decision whether to grant leave to amend a pleading at trial is committed to the sound discretion of the trial court. [Citations.]" (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 354-355.)

The trial court did not abuse its discretion. An easement by necessity may only be created when there is "(1) a strict necessity for the claimed right-of-way, as when the claimant's property is landlocked; and (2) the dominant and servient tenements were under common ownership at the time of the conveyance giving rise to the necessity." (*Murphy v. Burch* (2009) 46 Cal.4th 157, 163.) Although some evidence was presented about means of access to the Isaacson property, the central issue at trial was Isaacson

11

Holdings's claim that it had a written, recorded easement over Lot 18. In this court's review of the record, we were unable to locate any point in the presentation of evidence or argument at which the defendants were placed on notice that they should be defending against a claim of easement by necessity, nor has Isaacson Holdings identified any such notice. This new theory was not even raised until after the trial court had issued its proposed statement of decision. The trial court, therefore, reasonably concluded that this amendment would have prejudiced the defendants. Moreover, as the trial court noted, the evidence at trial demonstrated that the portion of the Isaacson property to which the disputed easement pertained was not without alternative means of ingress and egress. "To satisfy the strict-necessity requirement, the party claiming the easement must demonstrate it is strictly necessary for access to the alleged dominant tenement. [Citation.] No easement will be implied where there is another possible means of access, even if that access is shown to be inconvenient, difficult, or costly." (*Id*. at p. 164.) As the record would not have supported a finding of an easement by necessity, there was no error in denying Isaacson Holdings's request to amend the complaint to add that claim.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


ZELON, J.


We concur:



PERLUSS, P. J.                    SEGAL, J.


12