Filed 6/1/15  Estate of Quon CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| Estate of EVAN HOM QUON, Deceased. | B257493 |
| | (Los Angeles County Super. Ct. No. BP138815) |
| DOROTHY HOM LEUNG, | |
| Petitioner and Appellant, | |
| v. | |
| MICHAEL ENG et al., | |
| Contestants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Daniel Murphy, Judge.  Affirmed.

Law Offices of Jeffrey C. Chiao, Jeffrey C. Chiao for Petitioner and Appellant.

Goshgarian & Marshall, John A. Marshall, Mark S. Reusch for Contestants and Respondents.

_____

In a probate proceeding, Dorothy Leung (appellant), as executor for the estate of Evan Quon, brought a petition against Michael Eng and Griffith Park Dude Ranch & Bath House, Inc. (GPDR) (collectively, respondents). Appellant claimed that Michael Eng's purchase of GPDR stock, which was previously held in the name of appellant's father, Evan Quon, was invalid and wrongful. The trial court granted summary judgment in favor of respondents, finding that appellant's claims were time-barred. We affirm.

## BACKGROUND

### Factual Background

GPDR was incorporated in January 1968. From the time of its incorporation to the present, GPDR's only asset was a 76-unit apartment complex on a 2.44-acre property in Glendale. Edward Eng, a transactional attorney and accountant, was the majority shareholder and president of GPDR, and managed and operated the company from 1968 until his death in 2008.

Evan and Fay Quon were married in 1947. They had three children: Peter Quon, Diana Quon, and Dorothy Leung.[1] Evan handled the financial affairs for both himself and Fay, who could not read or write English. At one time, Edward Eng served as Evan and Fay's accountant.

Evan purchased shares in GPDR in approximately 1968. A rudimentary stock ledger from 1968 showed that Evan owned shares in the company. In July 1972, GPDR issued to "Evan H. Quon" two share certificates totaling 33 shares of GPDR, equivalent to a 5 percent interest in the company. In the early 1970's, Evan and Fay told their children that the couple owned a part of GPDR, or at least that Evan did.

In April 1991, Evan and Fay established "the Quon family trust." Evan and Fay were trustors and trustees of the trust, and Dorothy and her husband, Kirby Leung, were named as successor trustees. The trust agreement gave the trustee the power to invest trust property, to have all "rights, powers, and privileges of an owner with respect to

---

[1] To avoid confusion, throughout this opinion we refer to the Quon/Leung family members by their first names.

2

securities held in trust," to "manage, control, grant options on, sell . . . convey, exchange, . . . and repair trust property," and to "buy, sell and trade in securities of any nature . . . ." Exhibit 1 to the trust agreement was to list Evan and Fay's community property, while exhibits 2 and 3 were to list their separate property. These three exhibits, however, were left blank.

Also in April 1991, Evan executed his "last will and testament." Evan's will confirmed Fay's interest in the couple's community property, without listing what the community property was. The will provided that Fay would receive all of Evan's "jewelry, personal automobiles, clothing, household furniture and furnishings, and other tangible articles of a personal nature." The "rest, residue and remainder" of his estate would be "give[n], devise[d] and bequeath[ed]" to the trustee of the Quon family trust, "to be added to and become a part of the corpus of said Trust, and to be held, administered and distributed in accordance with the terms and provisions thereof." Fay was named executor of the will and Dorothy the successor executor. The executor was authorized to "mortgage, lease or sell the whole or any part" of Evan's estate, "subject only to such confirmation as may be provided by law."

Evan died on May 2, 2004. He was survived by Fay and their three adult children. After Evan died, Fay entrusted much of the handling of her financial affairs to Kirby and Dorothy. Kirby and Dorothy helped Fay resolve matters of Evan's estate pursuant to her duties as executor under Evan's will.

In August 2005, Fay executed a "trust allocation agreement" listing the property in the Quon family trust estate. The trust allocation agreement did not list the GPDR stock. Nor did the estate's 2004 tax return show a sale of the GPDR stock, though it did list sales of other securities.

When Edward Eng died in 2008, his son, Michael Eng, took over the management and operation of GPDR. On August 6, 2012, Michael Eng e-mailed Diana, attaching what he characterized as a "sales agreement" that Fay signed. The attached document (sale agreement), which was dated June 5, 2004, was handwritten on a sheet of paper bearing Edward Eng letterhead. It stated, in full: "Mrs Evan Quon do hereby transfer all

3

her right, title, and interest, in all her interest in the stock holdership to Michael Eng of the Griffith Park Dude Ranch and Bathhouse, Inc." The document was signed by "Fay H. Quon."

Michael Eng stated that in June 2004, a month after Evan died, he purchased Evan's shares in GPDR from Fay. In support of this claim, Michael produced the sale agreement and a copy of a $5,000 check he had written to Fay. It was later confirmed that this check was deposited in Fay's checking account in July 2004. Michael Eng stated that the stock purchase was handled by Edward Eng, and that, in addition to writing Fay a check for $5,000, he also gave Edward Eng $28,000 to give to Fay, for a total purchase price of $33,000.

Linda Wong, who was a secretary for Edward Eng, testified that in June 2004 she was instructed by Edward Eng to write "cancelled, shares sold to Michael Eng" on "stubs" in the GPDR stock book for the two share certificates totaling 33 shares originally issued to Evan in 1972. She also created a new stock certificate in the name of Michael Eng for 33 shares.

After Diana received Michael's e-mail, she, her siblings, and Kirby contacted an attorney to research the matter. In November 2012, in reviewing pleadings in litigation in the Estate of Edward Eng, the attorney found the GPDR stock certificates issued to Evan as well as a copy of the sale agreement signed by Fay.

**Procedural Background**

In January 2013, appellant petitioned for probate and to be appointed the executor of the estate of Evan Quon. Then, as the executor, she filed a petition for claim of ownership of the 33 shares in GPDR against Michael Eng and GPDR.[2]

---

[2]     Probate Code section 850 allows a personal representative or interested person to petition the court to determine title to real or personal property "[w]here the decedent died in possession of, or holding title to" such property, "and the property or some interest therein is claimed to belong to another." (Prob. Code, § 850, subd. (a)(2)(C); see also *Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1530, fn. 3.)

4

In August 2013, appellant filed the operative first amended petition (FAP) against Michael Eng and GPDR. The FAP alleged that Evan died holding possession of the GPDR shares and that Fay never owned shares in GPDR. The FAP further alleged that the purported sale agreement was a forgery and that Fay had no legal authority to transfer Evan's shares. In addition, even if the agreement were genuine, it was invalid because Edward and Michael Eng breached fiduciary duties and made fraudulent misrepresentations to Fay. According to the FAP, Evan's 5 percent interest in GPDR was worth approximately $400,000. Among other things, the FAP requested that the trial court determine that Evan and appellant, as executor of Evan's will, were and are the true owners of 33 shares of GPDR stock.

Respondents filed a motion for summary judgment, arguing that appellant had no evidence to support the allegations that the 33 shares in GPDR were never sold to Michael Eng. Respondents contended that appellant could not show that the sale agreement was a forgery, that she could not establish fraud or negligent misrepresentation, and that any claim would be barred by the statute of limitations. In addition, respondents asserted that the sale to Michael Eng was effective because the GPDR stock passed to Fay and she had the right to sell the GPDR stock.

Soon after the filing of respondents' motion for summary judgment, appellant filed her own motion for summary judgment or, in the alternative, summary adjudication. Appellant sought adjudication that (i) the 33 shares of GPDR titled in Evan's name were presumed to be his separate property; (ii) Fay had no legal authority to make transactions with the property of Evan's estate; (iii) GPDR owed and breached fiduciary duties to Evan's estate; and (iv) respondents could not establish a statute of limitations defense.

The trial court heard both motions in May 2014. It granted respondents' motion for summary judgment on the basis that appellant's claims were barred by the statute of limitations. The court found that in June 2004, "Fay Quon signed a bill of sale for the sale of the GPDR [s]tock to Michael Eng," and that the statute of limitations began to run at that point. The court disagreed with appellant's argument that the statute of limitations was tolled until 2012, when the purported sale agreement was provided to Diana.

5

Instead, it found that the Quon children "were aware of Evan and Fay Quon's ownership in GPDR" for many years. Furthermore, in helping Fay administer Evan's estate in the year following his death, Kirby and appellant should have learned of the stock sale. "Had Kirby properly attempted to marshal the GPDR [s]tock, he would have known of Fay's sale on June 5, 2004."

Because the trial court found that appellant's claims were barred by the statute of limitations, it did not reach the issues raised in appellant's motion for summary judgment or adjudication, and instead denied the motion.

Judgment was entered in favor of respondents. Appellant timely appealed.

## DISCUSSION

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. A defendant meets its burden on summary judgment by showing that the plaintiff cannot prove its causes of action, or by establishing a complete defense to the plaintiff's causes of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to show a triable issue of fact material to a cause of action or defense. (*Ibid.*)

We evaluate a summary judgment ruling de novo, independently reviewing the record to determine whether there are any triable issues of material fact. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1258.) In general, we give no deference to the trial court's ruling or reasoning, and only decide whether the right result was reached. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

## I. Respondents' motion for summary judgment

### A. Respondents' evidence of a sale

The pleadings define the issues on a motion for summary judgment. (*Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1524; *Lewis v. Chevron U.S.A., Inc.*

6

(2004) 119 Cal.App.4th 690, 694.) We therefore look to the operative pleading, the FAP, to determine the principal thrust of appellant's action. At its essence, the FAP requests one primary determination: that Evan and appellant, as executor of Evan's will, were and are the true owners of 33 shares of GPDR stock, and that Michael Eng does not have a valid interest in the shares.

The first question that must be answered, then, is whether there is sufficient evidence to support the conclusion that the 33 GPDR shares were transferred to Michael Eng. As the movants on summary judgment, in order to negate appellant's claim that Evan's shares were not transferred to Michael, respondents were required to make a prima facie showing that the 33 shares were transferred to Michael. (See *Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 392 [summary judgment motion must prima facie justify a judgment].) Appellant could then rebut this showing by demonstrating the existence of a disputed material fact. (*Ibid.*)

We find that respondents made a sufficient showing that Michael purchased the 33 shares in GPDR stock. This conclusion rests partially on the sale agreement, which, although not a model of good drafting, is sufficiently clear to demonstrate that Fay transferred her interest in GPDR shares to Michael Eng. The document states "Mrs Evan Quon do hereby transfer all her right, title, and interest, in all her interest in the stock holdership to Michael Eng of the Griffith Park Due Ranch and Bathhouse, Inc." Appellant acknowledged that the document appeared to be signed by Fay.

The conclusion that Fay sold the 33 shares is also supported by other evidence, including the unrebutted testimony of Michael Eng, who stated that he paid Fay a total of $33,000 for the shares, and that part of this payment was made with a $5,000 check. The evidence shows that Michael's $5,000 check to Fay was deposited in her checking account, and appellant provides no explanation for the payment other than as compensation for the GPDR shares. In addition, soon after the sale agreement was executed, Linda Wong cancelled Evan's shares in GPDR and issued 33 shares to Michael Eng.

7

The totality of this evidence was enough to make a prima facie showing that Michael purchased the 33 GPDR shares from Fay. Appellant then had the opportunity to rebut this conclusion by raising a disputed issue of material fact. Appellant, however, did not submit any evidence tending to show that the transfer did not occur as claimed by Michael. Despite alleging in the FAP that the sale agreement was a forgery, appellant produced no evidence to support this assertion. In addition, appellant failed to submit evidence supporting her contention that the sale agreement was the product of a breach of fiduciary duty or fraudulent misrepresentations.

### B. Community versus separate property

Instead of rebutting evidence of the sale by submitting conflicting evidence, appellant urged that Fay had no authority to sell the 33 shares to Michael Eng. This argument, which appellant renews on appeal, is largely based on her contention that Evan's shares in GPDR were his separate property and were not community property. In support of this contention, appellant repeatedly cites the case of *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176 (*Marriage of Brooks*), which stated: "According to the 'form of title' presumption, the description in a deed as to how title is held is presumed to reflect the actual ownership interests in the property." (*Id.* at pp. 184-185.) Based on this concept, the *Marriage of Brooks* court found that "the mere fact that property was acquired during marriage does not . . . rebut the form of title presumption; to the contrary, the act of taking title to property in the name of one spouse during marriage with the consent of the other spouse effectively removes that property from the general community property presumption. In that situation, the property is presumably the separate property of the spouse in whose name title is taken." (*Id.* at pp. 186-187.) Appellant argues that, under the "form of title" presumption enunciated in *Marriage of Brooks*, the GPDR stock was presumed to be Evan's separate property because the GPDR stock was issued to "Evan H. Quon."

Appellant, however, fails to mention that *Marriage of Brooks* was criticized and overruled in major part by *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400 (*Marriage of Valli*). *Marriage of Valli* held that *Marriage of Brooks* was "not

8

persuasive" insofar as the case purported "to exempt from the transmutation requirements purchases made by one or both spouses from a third party during the marriage." The *Marriage of Valli* court found that *Marriage of Brooks* was erroneous in determining, without regard to traditional transmutation concerns, that presumptive community property became separate property simply because title was listed in only one spouse's name. (*Marriage of Valli*, at p. 1405.) [3]

*Marriage of Valli* recited the traditional rules of community versus separate property: "Property that a spouse acquired during the marriage is community property [citation] unless it is (1) traceable to a separate property source [citations], (2) acquired by gift or bequest [citation], or (3) earned or accumulated while the spouses are living separate and apart [citation]. A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence." (58 Cal.4th at p. 1400.) Furthermore, although a married couple may transmute the character of community or separate property, a transmutation "'is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.' ([Fam. Code,] § 852, subd. (a).)" (*Marriage of Valli*, *supra*, 58 Cal.4th at p. 1400.)

In opposing summary judgment, appellant submitted no evidence that purchase of the GPDR stock was traceable to Evan's separate property, that the stock was transmuted from community property to separate property, or any other evidence that would support the assertion that GPDR stock was Evan's separate property. Appellant's argument that the GPDR stock was not community property, therefore, fails.

---

[3]    The *Marriage of Valli* decision was issued in May 2014, well prior to the filing of appellant's opening brief in November 2014. Appellant, at a minimum, had a duty to inform this Court that *Marriage of Brooks* was criticized and overruled in part by *Marriage of Valli*. In truth, since appellant made no effort to explain how *Marriage of Brooks* had any continuing validity to this matter in light of *Marriage of Valli*, appellant should not have cited or relied on the case at all. We note, however, that respondents also cited *Marriage of Brooks*, also without mention of *Marriage of Valli*.

## C. Fay's right to transfer the GPDR stock

Evan's will provided that property other than "tangible articles of a personal nature" would go to the trustee of the Quon family trust, "to be added to and become a part of the corpus of said Trust, and to be held, administered and distributed in accordance with the terms and provisions thereof." We can therefore conclude that Evan's one-half community property interest in the GPDR shares was to be transferred to the trustee and become part of the family trust upon his death. (See Prob. Code, § 21122 ["The words of an instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained."].)

As noted, Fay was trustee of the Quon family trust. The trust agreement gave the trustee all "rights, powers, and privileges of an owner with respect to securities held in trust," and the right to "sell and trade in securities of any nature . . . ." Fay was also named executor of Evan's will. The executor was authorized to "mortgage, lease or sell the whole or any part" of Evan's estate, "subject only to such confirmation as may be provided by law."

Based on these provisions, Fay had the right to sell the 33 shares of GPDR stock in June 2004. The sale was consistent with Fay's rights as trustee of the Quon family trust and as executor of Evan's estate.

Appellant argues that Fay had no authority to transfer the shares because the property disposed of in Evan's will was subject to probate administration. Probate Code section 13501, subdivision (b) provides that "[p]roperty disposed of in trust under the decedent's will" is subject to probate administration. Probate of Evan's estate was not opened until January 2013, well after Fay sold the shares.

Appellant, however, cites no authority for the proposition that the failure to probate Evan's estate would negate Fay's powers, as trustee and executor, to sell property. Nor does appellant cite to any authority that would render a sale void. Indeed, it was Fay and appellant who had the obligation to initiate probate of Evan's estate. We

10

do not see how a failure to start this process until nine years after Evan's death should be held against a third party purchaser.

Appellant's argument also overlooks the impact of Probate Code section 13562, which provides a remedy in a case such as this. It states that when the administration of the decedent's estate is commenced, the surviving spouse is liable for "[t]he restitution to the decedent's estate of the fair market value of the decedent's property if the surviving spouse no longer has the decedent's property," together with interest thereon and the net income the surviving spouse received from the property before disposing of it. (Prob. Code, § 13562, subd. (a)(2).) Probate Code section 13560 explains that "decedent's property" includes "the one-half of the community property that belongs to the decedent . . . ." Thus, these statutes contemplate the sale of a decedent's interest in community property prior to the opening of probate. Furthermore, the statutes gave the estate a remedy—it could have sought compensation from Fay.

For these reasons, we find that Fay had authority to sell the 33 shares of GPDR stock.

### D. Statute of limitations

We have found that Michael Eng submitted sufficient evidence that he purchased the shares of GPDR stock from Fay and that the sale was not void or unenforceable. Even if appellant still had a potential claim, however, it would be barred by the statute of limitations.

Appellant alleged that Michael Eng's purchase of the shares was aided by fraud and breach of fiduciary duty. The statute of limitations for fraud is three years. (Code Civ. Proc., § 338, subd. (d).) The statute of limitations for the breach of fiduciary claim appellant asserts is, at most, four years. (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479.) Appellant based her claims of fraud and breach of fiduciary duty on the allegedly small amount Michael Eng paid for the 33 shares. This payment was made in June 2004. The statute of limitations would normally begin to run on that date.

11

Appellant, however, argues that the statute of limitations was tolled by the delayed discovery rule, under which a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proc., § 338, subd. (d); *Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35.) The delayed discovery rule also applies in actions asserting breach of fiduciary duty. (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.)

In opposing summary judgment, it was appellant's burden to show triable issues of material fact supporting application of the delayed discovery rule. (*Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App. 4th 1, 6.) A party asserting fraud has a duty to exercise diligence to discover the facts. (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525.) Thus, the delayed discovery rule will not be applied unless a plaintiff can establish: "'"(a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when [s]he did actually discover the fraud or mistake. Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run.'" (*Ibid.*)

Appellant takes issue with the trial court's finding that she and Kirby were actually aware of Evan and Fay's interest in the GPDR stock in 2004. We agree that this finding of actual knowledge was unsupported. Simply because the Quon children were aware that their parents owned GPDR stock in the 1970's did not mean they knew that their parents still owned the stock in 2004. The evidence shows, however, that *Fay* knew that she owned the GPDR stock and that she sold it. Fay not only signed the sale agreement, she also deposited the $5,000 check from Michael. In addition, she spoke to her children about the GPDR stock in the 1970's and referenced the stock in a holographic will from 1990. Appellant failed to offer any evidence to counter the

12

conclusion that Fay knew about the GPDR stock in 2004 or that she deposited the $5,000 check in payment for it.

Further, appellant did not raise a triable issue of material fact that could support a finding of delayed discovery. Appellant's only asserted evidence for fraud or breach of fiduciary duty was the low price paid by Michael Eng to purchase the stock. Inadequacy of price alone, however, is not a sufficient ground to set aside a sale. (See *Price v. Slawter* (1962) 209 Cal.App.2d 608, 614; *Sutter Investment Co. v. Keeling* (1932) 123 Cal.App. 323, 327.) More important to the statute of limitations issue, though, is that the purported evidence appellant relies on to support her fraud and breach of fiduciary claims was readily available at the time the shares were sold. While the summary judgment motion was pending, appellant attempted to submit an appraisal report, prepared in 2013, valuing the GPDR property at $4.45 million, which (according to appellant) would make the 33 shares worth $222,500. There is no reason an appraisal report could not have been commissioned at or around the time the stock was sold. Since appellant or Fay could have easily discovered the allegedly inadequate purchase price in 2004, appellant was incapable of showing the "[l]ack of means of obtaining knowledge" necessary to invoke the delayed discovery rule. (*Parsons v. Tickner*, *supra*, 31 Cal.App.4th 1513, 1525.)

Finally, even if Fay's knowledge of the sale was somehow not enough to support running of the statute of limitations, the evidence shows that appellant and Kirby should have known about the sale themselves. After Evan's death, Kirby and appellant helped Fay marshal assets and resolve matters of Evan's estate. They helped Fay complete a "trust allocation agreement," which listed the property in the Quon family trust estate but did not list the GPDR stock. They also helped gather information relevant to the estate's 2004 tax return, which did not show a sale of the GPDR stock. In marshaling the estate, appellant and Kirby should have discovered the sale of the GPDR stock, and they could have commissioned an appraisal to determine whether Fay received a fair price. The fact that they did not discover the sale could only be due to a lack of communication between themselves and Fay. They cannot leverage their own carelessness to toll the statute of limitations against a third party.

13

## II. **Appellant's motion for summary judgment or adjudication**

Appellant appealed the denial of her cross-motion for summary judgment or summary adjudication. In opposing respondents' motion for summary judgment, appellant failed to raise a triable issue of material fact that would justify denial of respondents' motion. Appellant's own motion, therefore, necessarily failed, and her appeal is moot.

## **DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.