Filed 12/16/22  Estate of Bowman CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of ALFREDO BOWMAN, Deceased. | B315723 (Los Angeles County Super. Ct. No. 16STPB03261) |
| PATSY BOWMAN, Petitioner and Appellant, v. DR. SEBI'S OFFICE, INC. et al., Objectors and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Juarez, Judge.  Reversed.

Decker Law and James D. Decker for Petitioner and Appellant.

DLA Piper, Justin R. Sarno, Stephanie Peatman and Connor M. Scott for Objectors and Respondents.

---

Alfredo Bowman died in a Honduran jail in 2016, leaving behind an international herbal-supplement empire, at least two women claiming to be his widow, and several would-be heirs to his estate. This case involves a claim by one of the purported widows, appellant Patsy Bowman, to a portion of the herbal-supplements empire. Patsy[1] filed a petition in probate court seeking to dispossess two of Alfredo's business partners of their ownership stake in Alfredo's supplement company, respondent Dr. Sebi's Office, Inc. (DSOI). She argued that Alfredo's partners improperly diluted Alfredo's ownership in DSOI, which she claims originated as a business venture between herself and Alfredo and was community property.

The probate court granted summary judgment in favor of respondents on the ground that Patsy had failed to file her petition within the three-year statute of limitations for fraud. (Code Civ. Proc., § 338, subd. (d).) The divestiture of shares to Alfredo's partners occurred in 2015, but Patsy did not file her petition until 2019. Patsy claimed she did not learn of the divestiture until 2018, but the probate court found her claim of actual knowledge beside the point. In the court's view, Patsy's claim was time-barred because the undisputed facts showed she had reason to know she was being cut out of the business as early

---

[1] We refer to the members of the Bowman family by their first names to avoid confusion. We intend no disrespect.

as 2013 and she failed to exercise reasonable diligence to follow up on those facts.

Patsy contends the trial court erred, and we agree. If, as Patsy alleges, she and Alfredo were still married at the time of his death, while he was alive Alfredo owed fiduciary duties to Patsy, including a "sua sponte duty . . . to furnish information concerning the *disposition* of community assets." (*In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1271.) When a breach of fiduciary duty prevents a party from learning of an injury, the statute of limitations does not begin running until the injury is in fact discovered. (*Estate of Young* (2008) 160 Cal.App.4th 62, 77.) There are genuine issues of material fact as to whether this rule applies here, and therefore when the statute of limitations on Patsy's claim began running. We therefore reverse the trial court's order granting summary judgment.

## FACTS AND PROCEEDINGS BELOW

Alfredo claimed that he began developing and selling herbal supplements under the name Dr. Sebi in the early 1980s. According to Pasty, Alfredo taught her to make herbal products in 1981, and they established a Los Angeles Dr. Sebi's office together in 2000. Patsy did most of the work making supplements and handling day-to-day operations, while Alfredo was the public face of the business. In 2004 or 2005, Alfredo moved to Honduras, leaving Patsy to manage the business in Los Angeles. In 2006, the two were married. The marriage certificate listed Los Angeles as their place of residence. Around 2009, Patsy moved to Florida to open a second Dr. Sebi's location

3

in Miami.[2]  In 2011, she filed articles of organization in Florida for Dr Sebi's Office LLC.[3]  She listed herself, Alfredo, and their daughter Xave Chapman as managing members.

In October 2013, the relationship between Patsy and Alfredo came to an abrupt end.  In Patsy's account, she discovered in 2011 that Alfredo had a one-year-old daughter named Taiwa in Honduras with another woman.  Patsy found this particularly hurtful because Alfredo previously had another daughter, Saama, with a third woman about 20 years earlier.  Patsy nevertheless forgave him and helped take care of Taiwa when she was in Honduras, but in October 2013, the situation became intolerable when Patsy saw Facebook postings involving Alfredo that she found "disrespectful."

As Patsy later recounted in a deposition, she and Alfredo fought, and she decided to leave Alfredo behind and move to Grenada to live with her sister.  In their final conversation after the fight, Patsy talked with Alfredo about the future of the business.  Alfredo told Patsy that he was considering putting a

_____

[2] In her petition in probate court, Patsy alleged that she moved to Florida in 2013, but this is inconsistent with her 2011 filing of articles of organization for Dr Sebi's Office LLC, in which she listed an address in the Miami metro area. We therefore assume that she moved to Florida in 2009, as she alleged in the cross-complaint she later filed against Alfredo after he sued her.

[3] This is one of several business entities organized under variations of the Dr. Sebi's brand name.  It should not be confused with DSOI, one of the respondents in this case, nor the other entities with similar names, such as Dr. Sebi, Inc, and Dr. Sebi Urua Health Club International, LLC, which Alfredo later alleged that Patsy and her associates organized to compete with him and siphon away his company's resources.

4

woman named Jenny Villasenor[4] and respondent Pablo Medina in charge of the business, and Patsy told him she didn't think it was a good idea. They talked about the money in the company's bank account, and Patsy said, "[y]ou know very well I don't even go to that bank. You know, you can take—you can have everything. I don't really care."

On November 15, 2013, Alfredo, Patsy, and Xave filed articles of dissolution for Dr. Sebi's Office, LLC in Florida. According to the document, the company was dissolving due to a "conflict of interest." From this point forward, Patsy stopped communicating with Alfredo, but she did not seek a legal separation or divorce. Patsy continued creating herbal formulations with the help of her daughter. Patsy also set up a new business in the Caribbean under the name Mrs. Dr. Sebi's Products.[5] By Patsy's estimation, approximately 80 percent of the former customers of Dr. Sebi shifted to her new company after the split. At no point during this time did Patsy receive any dividend payments, nor any communication regarding the business of DSOI.

In March 2014, Alfredo filed articles of incorporation for DSOI. DSOI and Medina contend the new business vehicle was formed because Patsy coordinated the theft of inventory and bank account funds from the LLC's Los Angeles office. Patsy disputes

---

[4] Alfredo subsequently named Villasenor as executor to his estate.

[5] In his lawsuit against Patsy, Alfredo alleged that Patsy owned another company, International Healing, Inc. Patsy claimed that her friend Jaymie "Nina" Collins was the sole owner of International Healing, Inc., but acknowledged selling herbal supplements through that company.

those claims, and asserts DSOI was the new corporate form for the same business she and Alfredo started before marriage and operated during the marriage.

In October 2015, DSOI issued 50 percent of the company's shares to Alfredo, and 25 percent each to Medina and Villasenor, whom Alfredo hired to help manage the business following Patsy's departure. According to the minutes of the DSOI board of directors, Alfredo made a capital contribution of $20 for his shares, and Villasenor and Medina contributed $10 each.

In May 2014, Alfredo filed suit against Patsy and several other individuals and companies. In his complaint, Alfredo alleged that Patsy and several other defendants breached their fiduciary duties to Alfredo by forming competing businesses under the Dr. Sebi brand name that attempted to siphon business from Alfredo. Neither party points to any information in the record before us as to when Patsy was served or otherwise made aware of this suit.

Alfredo died while in police custody in Honduras on August 6, 2016. In his will, dated October 1, 2015, he left half of his shares in DSOI to his daughter Saama, and half to his daughter Taiwa. He stated that he had once been married to Alethia J. Bowman, but that the two had divorced. He did not mention Patsy in his will.[6]

On August 13, 2018, Villasenor, whom Alfredo had appointed executor of his estate, filed an inventory of Alfredo's

---

[6] There is no further information in the record about Alethia. Another purported widow, Melba Bowman, later filed a petition in the probate case. She produced a 1957 Mississippi marriage license listing herself as Alfredo's wife and claimed that the two had never divorced.

estate.  The sole asset listed was Alfredo's 50 percent ownership stake in DSOI, with an appraised value of $1.4 million.  On March 4, 2019, Patsy filed a petition under Probate Code[7] section 850, subdivision (a)(2)(D) asking the probate court to determine that all of DSOI belonged to Alfredo's estate, and that DSOI was community property of Patsy and Alfredo, followed by a first amended petition in March 2020.  Respondents demurred on the ground that Patsy's objection was time-barred.  The probate court sustained the demurrer with leave to amend.

Patsy filed the operative second amended petition in November 2020.  In this petition, she made two primary allegations relevant here.  First, she claimed that she and Alfredo jointly owned the Dr. Sebi's business prior to its incorporation as DSOI, and that her interest in the assets underlying DSOI survived the incorporation.  Villasenor and Medina, who paid only $10 for their respective ownership stakes in DSOI, thus diluted both Patsy and Alfredo's ownership while contributing virtually nothing in exchange.  Second, she alleged that her claims were not time-barred because the delayed discovery rule applied.  She claimed that she did not discover that Alfredo had given Villasenor and Medina stock in DSOI until August 2018, when Villasenor filed the inventory and appraisal of Alfredo's estate.  Thus, when Patsy filed her petition less than one year later, she acted within the limitations period for claims of fraud and conversion.

Respondents again filed a demurrer, which the probate court overruled.  Respondents filed a motion for summary

_____

[7] Unless otherwise specified, subsequent statutory references are to the Probate Code.

judgment arguing that Patsy's claims were time barred because "plaintiffs are charged with a duty to investigate claims with reasonable diligence and the undisputed facts establish that Patsy was on inquiry notice of her claims but did nothing to investigate." After full briefing and argument, the court granted the motion, finding, "based on the undisputed facts, [that] Patsy . . . is not blamelessly ignorant of the cause of her injuries. Accordingly, she may not rely on the delayed discovery rule. Therefore, the [s]econd [a]mended [p]etition is barred by the statute of limitations."

Patsy filed a notice of appeal from the order granting the motion for summary judgment.

## DISCUSSION

The parties dispute whether the trial court's order granting summary judgment is appealable, as well its correctness. Before we address those arguments, we first provide some background on section 850.

### A.    Section 850 Petitions

Under section 850, an interested party to an estate may file a petition requesting that the court make an order to recover the decedent's "real or personal property, title to or possession of which is held by another." (§ 850, subd. (a)(2)(D).) This statute "does not contemplate an *award* of *damages* to anyone. The statutory scheme's purpose is to effect a conveyance or transfer of property belonging to a decedent or a trust or another person under specified circumstances, to grant any appropriate relief to carry out the decedent's intent, and to prevent looting of decedent's estates." (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 117.) In adjudicating a petition, the probate court has "the power

8

to determine the whole controversy between the parties before it." (*Id*. at p. 114.)

Although a claim under section 850, subdivision (a)(2)(D) provides parties a method to recover property on behalf of the estate, it can also allow an heir or creditor of the estate to assert her own interest in property. For example, in *Estate of Myers* (2006) 139 Cal.App.4th 434, a creditor of the decedent used a petition under section 850 to attempt unwinding a fraudulent transfer of property from the decedent to the decedent's daughter's boyfriend. (*Id*. at p. 437.) In form, the creditor asked the court for an order requiring the boyfriend to return the profits from the sale of the property to the estate, but in substance the purpose of the petition was for the creditor to obtain repayment of the debt. (*Id*. at pp. 439-440.) The court held that the creditor was an "interested person" and therefore had standing to bring the petition under section 850. (*Estate of Myers*, *supra*, at pp. 440-441.)

Except when the Probate Code provides a specific rule otherwise, probate proceedings are governed by "the rules of practice applicable to civil actions." (§ 1000.) For this reason, "[g]enerally speaking, the claim underlying a section 850 petition in probate is subject to the same statute of limitations that would apply had an ordinary civil suit been brought." (*Estate of Yool* (2007) 151 Cal.App.4th 867, 874, fn. 5.) By the same logic, we address a motion for summary judgment in a proceeding under section 850 according to the same standards as in an ordinary civil suit. (See *Estate of Myers*, *supra*, 139 Cal.App.4th at p. 444.)

**B.    The Trial Court's Order Granting Summary Judgment is Appealable**

Respondents contend that we must dismiss the appeal because the probate court's summary judgment order is not an appealable judgment. We disagree.

There are two different provisions that appear to make the trial court's order in this case appealable, but respondents allege that the order fits neither of them. Under Code of Civil Procedure section 437c, subdivision (m)(1), summary judgment is appealable, but an order granting a motion for summary judgment is not appealable. (*Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030.) When the party on the losing end of a summary judgment motion files an appeal prematurely, courts do not typically punish the party by dismissing the appeal. Instead, so long as the order granting summary judgment "is followed by a judgment, the appellate court may deem the premature notice of appeal to have been filed after the entry of judgment." (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.) Respondents contend that this exception does not apply because the court did not issue a judgment after granting summary judgment.

Separately, under section 1300, subdivision (k), an order "[a]djudicating the merits of a claim made under" section 850 is appealable. (See also Code Civ. Proc., § 904.1, subd. (a)(10) ["an order made appealable by the Probate Code" is appealable].) Respondents contend that this provision also does not apply to Patsy's appeal because the dismissal of a claim under the statute of limitations is not an adjudication on the merits. (See, e.g., *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, 776-777 [listing cases].)

10

We are not persuaded by respondents' arguments. As Patsy notes, strong policy reasons support holding in other contexts that a ruling on the basis of the statute of limitations is not a determination on the merits. For example, in *Mid-Century Ins. Co. v. Superior Court*, *supra*, 138 Cal.App.4th 769, the court addressed a law extending the statute of limitations for parties injured in the 1994 Northridge earthquake to sue insurance companies. The law contained an exception for claims that had previously been "litigated to finality" (Code Civ. Proc., § 340.9, subd. (d)(1)), but the court held that the exception did not apply to cases that had previously been dismissed as barred by the statute of limitations. The court explained that "the express purpose of [Code of Civil Procedure] section 340.9 [was] to *revive exactly those claims* that had been precluded by the statute of limitations." (*Mid Century Ins. Co.*, *supra*, at p. 777.)

Other cases hold that the termination of an action on the basis of the statute of limitations is not an adjudication on the merits for purposes of res judicata (e.g., *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595-1596) or for malicious prosecution (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 749). The reasons for these decisions are again plain. Res judicata prevents parties from relitigating matters that have already been finally decided. If a claim has been previously rejected only because the plaintiff failed to file it on a timely basis, then there has been no determination of the merits of the claim, and no reason to believe that litigating the question in a new case would be wasteful. (See *Koch v. Rodlin Enterprises*, *supra*, at p. 1596.) In the case of malicious prosecution, the plaintiff must show that he or she was innocent of the wrongful conduct the defendant previously alleged. In *Lachner v. LaCroix*,

11

*supra*, at page 751, the court noted that a dismissal of a prior case on the basis of the statute of limitations fails to establish that innocence.

There is no comparable justification for denying Patsy the right to appeal the probate court's decision in this case. The probate court's denial of her petition was the final disposal of her claim. The Legislature has made grants of summary judgment appealable, and final dispositions of petitions under section 850 appealable. There is no reason to suppose that the Legislature intended to create an exception for cases where summary judgment in a petition under section 850 is granted on the basis of the statute of limitations. To dismiss Patsy's appeal on this ground would elevate form over substance, and hinder the orderly administration of the probate proceeding by unnecessarily delaying appellate review of Patsy's statute of limitation claim, which the trial court found dispositive of her only alleged interest in the estate. As the court explained in a similar situation in *Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, "we may consider [an order] a final judgment for purposes of appeal when as here, [it has] all the earmarks of a final judgment. Nothing remains for judicial consideration concerning the [petition], the order[ is] the only judicial ruling[ ] regarding the [petition], and there is no other avenue for appellate review. Under these circumstances, the order[ is] appealable as a final judgment. [Citations.]" (*Id*. at p. 755.)

## C. The Undisputed Facts Do Not Show Patsy's Petition Is Time-barred

The operative petition does not allege specific causes of action as would a civil complaint. Instead, Patsy describes respondents' alleged misconduct and asks the court for an order

directing Medina and Villasenor to convey their shares in DSOI to the estate. Nevertheless, we agree with both parties that the gravamen of Patsy's petition is an allegation of fraud in Medina and Villasenor obtaining their 50 percent ownership stake in DSOI.

A three-year statute of limitations applies in cases of fraud or mistake, subject to the condition that "[t]he cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code Civ. Proc., § 338, subd. (d).) Although the text of the statute suggests that actual knowledge of an injury is required to begin the limitations period, " 'the courts have read into the statute a duty to exercise diligence to discover the facts. The rule is that the plaintiff must *plead and prove the facts* showing: (a) Lack of knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date). (c) How and when [s]he did actually discover the fraud or mistake. Under this rule constructive and presumed notice or knowledge are equivalent to knowledge.' " (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525.)

Respondents argue that, under this rule, Patsy did not file her petition within the limitations period. The issuance of shares to Medina and Villasenor occurred in October 2015, but Patsy did not file her petition until March 2019, three-and-one-half years later. Furthermore, respondents argue that the delayed discovery rule does not apply because Patsy had reason to believe she had suffered an injury—the loss of control of the business—as early as October or November 2013, when it should have been clear to Patsy that Alfredo meant to run the Dr. Sebi's operation

13

without her involvement. Patsy testified in a deposition that her final conversation with Alfredo occurred around this time, and she told him, "you can have everything. I don't really care." She acknowledged that, from that point forward, she received no income from the business, nor any communication from Alfredo about its prospects. According to respondents, this was sufficient to put Patsy on notice that her ownership interest in the Dr. Sebi's business was at risk, even if the transfer of shares to Villasenor and Medina had not yet occurred.

Respondents' argument might be persuasive if not for Patsy's alleged fiduciary relationship with Alfredo. Under Family Code section 721, subdivision (b), "in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." One of the obligations of this fiduciary relationship is to provide an "accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses, including an immediate, full, and accurate update or augmentation to the extent there have been material changes." (Fam. Code, § 2102, subd. (a)(1).) Under these statutes, the spouse managing a community asset has a "sua sponte duty . . . to furnish information concerning the *disposition* of community assets." (*In re Marriage of Prentis-Margulis & Margulis, supra,* 198 Cal.App.4th at p. 1271.) This obligation continues even if spouses formally separate up to "the date of the distribution of the community . . . asset." (Fam. Code, § 2102, subd. (a).)

14

At the summary judgment stage, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom ([Code Civ. Proc.], § 437c, subd. (c)), and must view such evidence [citations] . . . [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We review the court's decision to grant a motion for summary judgment de novo. (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.)

In this case, Patsy has produced evidence that she and Alfredo were married but never divorced, and that they together started the business that was later incorporated as DSOI. Construing the evidence in the light most favorable to petitioner, Alfredo was a fiduciary given his marriage to Patsy. And because Alfredo was a fiduciary, Patsy was not under an obligation to inquire or investigate what Alfredo was doing with a community property business even if she had suspicions.[8] Nor given the applicable summary judgment standard did Patsy's statement to Alfredo during a marital argument that "you can have everything" obviate Alfredo's sua sponte duty to furnish information concerning the later disposition of the community business. (*In re Marriage of Prentis-Margulis & Margulis, supra*, 198 Cal.App.4th at p. 1271.)[9]

---

[8] The spousal fiduciary duty, of course, runs both ways and applies equally to Patsy and her own business dealings during the marriage.

[9] Counsel for respondents suggested at oral argument that merely by making this statement, summary judgment was proper because Patsy renounced her interest in DSOI. We reject this claim because "[w]e do not consider arguments that are raised for

15

Instead, "[w]here the facts adequately allege breach of fiduciary duty or undue influence, the courts will allow a date-of-discovery rule to be applied." (*Estate of Young*, *supra*, 160 Cal.App.4th at p. 77; accord, *Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 916.) This approach " ' "is particularly appropriate when the [fiduciary] maintains custody and control of a plaintiff's property or interests." [Citation]' [Citation]." (*Estate of Young*, *supra*, at p. 77.) The reasons for a date-of-discovery rule applying in this situation, and not a duty to investigate rule, are straightforward. As the court explained in *Parsons v. Tickner*, *supra*, 31 Cal.App.4th 1513, " '[t]he fiduciary relationship carries a duty of full disclosure, and application of the discovery rule "prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." [Citation.]' " (*Id.* at p. 1526.)

Thus, even if Patsy had reason to suspect Alfredo was shutting her out of the business, that suspicion was insufficient to trigger a duty to investigate given Alfredo's alleged fiduciary duty. Because there are disputed factual issues as to whether Alfredo was a fiduciary (and thus whether the date-of-discovery

_____

the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9.) In addition, the argument fails on the merits because alleged community property such as DSOI cannot become the separate property of one spouse by oral declaration. (See, e.g., Fam. Code, § 852, subd. (a) ["A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected"].)

rule applies), summary judgment on the basis of Patsy having a duty of inquiry was error.

We note that the allegations in Patsy's petition do not solely involve a breach of fiduciary duty by Alfredo in failing to disclose to her the disposition of community assets. In addition, Patsy alleges that Villasenor and Medina themselves committed fraud, possibly by forging Alfredo's signature on the stock certificates and board minutes or possibly by exercising undue influence on Alfredo and convincing him to sign documents he did not understand. But respondents' statute of limitations argument is that Patsy "knew, or should have at least suspected, the basis of her claims of corporate malfeasance as early as 2013." That can be the case only to the extent that Patsy's claims arise from Alfredo's decision to exclude her from ownership of DSOI. Nothing about Alfredo's alleged conduct in 2013 or 2014 could have put Patsy on inquiry notice that Villasenor and Medina might later attempt to swindle Alfredo out of half of his ownership stake in DSOI. It is true that "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim" in order for the statute of limitations to begin running; it is sufficient that "the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111.) But a plaintiff's suspicion of wrongdoing by one party cannot begin the clock running on misconduct by another party when the second party has not yet committed the alleged misconduct.

In one view, Patsy's claims arise from Alfredo's conduct in 2013 and 2014, in which case (construing the facts in the light most favorable to Patsy for summary judgment purposes) she was entitled to depend on Alfredo's fiduciary duty to disclose any

17

planned disposition that would erase her interest in community property. Alternatively, her claims arise from Villasenor's and Medina's alleged fraud in taking a 50 percent interest in DSOI without Alfredo's consent. In the latter case, nothing in the record before us suggests that Patsy had reason to suspect the wrongdoing until Villasenor filed the inventory of the estate in August 2018, less than one year before Patsy filed her petition. In either scenario, summary judgment in favor of respondents based on the statute of limitations is inappropriate.

## DISPOSITION

The trial court's order granting summary judgment is reversed. Appellant is awarded her costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.