Filed 7/24/25  Salute v. Siminski CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PATRICIA M. SALUTE, | B327416 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC105088) |
| v. | |
| CAMERON SIMINSKI, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Valerie Salkin, Judge.  Affirmed.

Law Offices of Jay W. Smith and Jay W. Smith for Plaintiff and Appellant.

Hayden & Kassel, Glenn M. Hayden for Defendant and Respondent.

This case involves a dispute over the ownership of a Tarzana home. Respondent Cameron Siminski inherited the home when she was a young child. Siminski's mother, appellant Patricia Salute, told Siminski that Salute owned the home. Salute also behaved as though the home were hers, using it as collateral for six-figure loans beginning while Siminski was still a minor. When Siminski was 19 and experiencing mental health challenges, Salute got her to sign "tax paperwork" that was in fact a grant deed transferring the property from Siminski alone to Salute and Siminski as joint tenants. Salute subsequently used the home as collateral for two sizeable loans without Siminski's knowledge; one of the loans led to the recordation of a $405,000 deed of trust against the property.

Six years later, Salute filed the instant action against Siminski, asserting causes of action for partition of the property, breach of oral contract, and declaratory relief. Siminski promptly filed a cross-complaint against Salute, asserting causes of action for quiet title, cancellation of instrument, and declaratory relief. The lender holding the deed of trust, PennyMac Loan Services, LLC, intervened in the proceedings, and Siminski asserted claims against it. Siminski and PennyMac ultimately settled on the first day of trial; pursuant to that settlement, Siminski agreed that PennyMac's deed of trust was a valid first position lien against the property.

After a bench trial of Salute's and Siminski's claims against each other, the trial court found that Salute was not credible and that she obtained Siminski's signature on the grant deed through fraud and undue influence. It further found that Siminski rebutted the presumption that she knew or should have known what she was signing, and had neither actual nor constructive

2

notice of Salute's malfeasance until Salute filed the action against her.  The trial court accordingly concluded that Siminski's claims were not barred by the statute of limitations. It also rejected Salute's contention that Siminski's claims were precluded by her settlement with PennyMac.  The trial court found the grant deed voidable, declared the transfer void, and entered judgment in favor of Siminski.

Salute now contends the court should have partitioned the property and entered judgment in her favor.  She argues that Siminski was a legally competent adult when she signed the grant deed and therefore had actual or inquiry notice of the alleged fraud long before she filed her claims, which are barred by the statute of limitations. Salute alternatively contends that Siminski's pretrial settlement with PennyMac constitutes a judicial admission that the deed of trust is valid, and therefore that the grant deed preceding it is also valid.  We reject Salute's contentions and affirm the judgment.

## FACTUAL BACKGROUND

Although Salute "does not concede" that she defrauded or unduly influenced Siminski, she does not meaningfully challenge the trial court's factual findings. We accordingly draw the following facts largely from the trial court's statement of decision.

Siminski is the daughter of Salute and the late James Siminski, who never married.  James died in 1994, when Siminski was four years old.  James left the Tarzana home to Siminski; at the time, it was encumbered only by a $3,633 lien. The probate court named Salute as Siminski's guardian and authorized her to live in the home with Siminski and her older children from a previous relationship until Siminski turned 21.

3

Salute never told Siminski that Siminski was the owner of the home. Instead, she told Siminski that James had left the home to both of them, and Siminski would inherit the property upon Salute's death. Salute also referred to the house as "her house" around others, including her sister Barbara Cody. After Cody corrected Salute and said it was "Cameron's house," Salute prevented Cody from seeing Siminski. Salute told Siminski that Cody "hated her" and did not allow Siminski to have a relationship with Cody. The trial court found Cody's testimony to this effect "chilling," and characterized Salute's actions as "a decades-long effort to wrongfully withhold ownership of the [home] from Defendant Siminski."

In March 2007, while Siminski was still a minor, Salute "obtained a $250,000.00 line of credit, secured against the Property and pocketed over $100,000." "Thereafter, Salute used the Property as a security to back four subsequent loans on September 27, 2007, October 3, 2007, April 13, 2009, and January 12, 2010. Salute used the proceeds of each loan to pay off the previous loan and either kept the additional proceeds or gave the money to her older children. Siminski received none of the proceeds." The court found that Salute treated Siminski "differently from her half-brothers" in other ways as well, including giving them their own bedrooms while Siminski "needed to share her space," and requiring Siminski to park on the street "because the driveway was reserved" for them. Salute also rented out rooms of the home to "various third-party tenants," including a college professor who testified that Salute "became visibly upset" when anyone but her retrieved or distributed the mail and "made clear that no one else was allowed

4

to collect and distribute the mail."[1]  Siminski also testified she was not allowed to get the mail.

On October 3, 2007, Salute "arranged for transfer of the [home]'s title from Siminski to Salute."  After the transfer triggered a property tax reassessment, Salute transferred the property back to Siminski via quitclaim deed in 2008.  Siminski was not aware of either transfer.

In late 2008, when Siminski was 19, she attempted suicide and was hospitalized in a psychiatric ward.  "When she was released, no one from her family, including her mother, Salute, was willing to pick her up from the hospital."  "Both before and after the suicide attempt, Salute consistently belittled Siminski, both to Siminski directly and in conversations, at least one of which Siminski overheard, with Salute's other children."  Salute also isolated Siminski from extended family members who desired relationships with her, including Cody and Siminski's paternal half-sister.  The trial court found that Salute "engaged in an extended pattern of behavior designed to isolate Siminski" and "ensure that Siminski would have no social support system other than Salute."  The court further found that these efforts were effective, giving Salute a deep "hold" on Siminski "during a vulnerable time in Siminski's life."

It was against this backdrop that in February 2009, shortly after Siminski's release from the hospital, "Salute directed Siminski to sign a grant deed, which gifted the Property from Siminski alone to Salute and Siminski as joint tenants (the 2009 transfer).  Salute falsely told Siminski that Siminski was signing

---

[1]  Siminski testified that after Salute moved out of the home in 2018, she found some of the professor's bank statements that Salute had hidden and failed to give him.

something for taxes." The trial court found that Siminski signed the 2009 grant deed, though it also credited Siminski's testimony "that she does not recall signing this document and that to the best of her recollection, she was only told to sign documents 'for taxes.'" It expressly found that "Siminski was unaware of what she was signing," and that "Siminski has proven that Salute took advantage of Siminski's delicate mental state, youth, and trust in Salute in cunningly manipulating Siminski to sign the 2009 grant deed and misleading her as to what it was. . . . Siminski, while not legally incompetent, clearly lacked awareness and wherewithal to question Salute's machinations."

In January 2010, armed with the 2009 grant deed, Salute obtained a $405,000 mortgage loan from PennyMac's predecessor in interest. The trial court found that Siminski signed some of the loan documents, but also found that her signature was "forged in at least one document therein." The court further found that Siminski's signature was missing from the original 2010 deed of trust, and that her name appeared to have been added to the recorded copy after it was executed by Salute and notarized. The trial court concluded it was "not a stretch to infer that Salute misled Siminski as to the nature of the transaction and that Salute added Siminski's signature and wrote in Siminski's name" after the recorded deed of trust was notarized. Salute used approximately $220,000 to pay off the previous loan and received the remainder as loan proceeds. "No money from the remaining loan proceeds was given to Siminski." The parties stipulated that the loan was in default as of August 2017.

6

## PROCEDURAL HISTORY

On December 2, 2016, after Salute and Siminski's "relationship deteriorated," Salute filed a complaint against Siminski. She asserted causes of action for partition of the property, breach of an alleged oral contract pursuant to which Salute agreed to pay all expenses of the property in exchange for Siminski obtaining a college degree, and declaratory relief. Siminski filed a cross-complaint on December 27, 2016. She asserted causes of action for cancellation of the 2009 grant deed, accounting, conversion, and declaratory relief.

In early 2018, PennyMac sought and obtained leave to intervene "to protect its security interest" in the property. It asserted causes of action for quiet title, declaratory relief, and imposition and foreclosure of equitable lien.

The trial court held a bench trial in September 2018. Notably, this court also expressly found Salute not credible. While the final statement of decision was pending, the matter was reassigned to a different judge, who granted PennyMac's motion for new trial in December 2019. In August 2020, Siminski filed a first amended cross-complaint. It retained the causes of action for cancellation of the 2009 grant deed and declaratory relief against Salute, and added causes of action for cancellation of deed of trust, quiet title, and declaratory relief against PennyMac.

PennyMac moved for summary judgment or summary adjudication of its claims. It argued, among other things, that Siminski's claims were barred by the applicable three-year statute of limitations, because she sued PennyMac more than six years after the deed of trust was recorded. Salute filed a "non-opposition" and joined PennyMac's statute of limitations

7

arguments. Siminski opposed the motion. The court denied summary judgment, finding there were triable issues of material fact. It also noted, however, that "it is likely that PennyMac is entitled to equitable relief in this action."

The matter proceeded to a second bench trial before a third judge on August 15, 2022. As Salute's counsel began his opening statement, the parties agreed to conduct further settlement talks. Upon their return to the courtroom, PennyMac announced that Siminski had accepted a settlement offer pursuant to Code of Civil Procedure section 998.[2] Under the terms of the deal, Siminski agreed that PennyMac's deed of trust "constitutes a valid, first position lien against the Property." She also agreed that judgment would be entered against her and in favor of PennyMac on both PennyMac's complaint in intervention and her first amended complaint. For its part, PennyMac agreed to pay Siminski $260,000, "which, if applied to the Loan, would reduce the balance of the Loan to $217,282.15 as of August 3, 2022." The settlement further provided that it was "not to be construed either as an admission that any party is liable in this action or that any party has suffered any injury or damage." The court later entered judgment in accordance with the settlement. After agreeing to the settlement, PennyMac dismissed Salute from its complaint in intervention, with prejudice.

The court then presided over a bench trial to resolve Salute's and Siminski's remaining claims. Salute and Siminski gave competing testimony, and each called other witnesses. The parties stipulated to the admission of numerous exhibits, including the grant deed and deed of trust documents. The

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

8

record reflects no argument by Salute that trial was unnecessary or improper in light of Siminski's settlement with PennyMac. After trial, at the court's request, the parties submitted supplemental briefing on the statute of limitations issue.

The court issued a written statement of decision in which it made the factual findings summarized above. It further found that Siminski did not discover and reasonably could not have discovered Salute's wrongdoing before Salute filed suit in 2016, and Siminski's claims therefore were timely. The court also rejected Salute's contention, raised in her post-trial briefing and objections to the tentative statement of decision, that Siminski's settlement with PennyMac constituted a judicial admission that the 2010 deed of trust was valid for all purposes. The court declared the 2009 grant deed void, but declined to award either Salute or Siminski a monetary judgment. It entered judgment in favor of Siminski and against Salute on all causes of action. Salute timely appealed.

## DISCUSSION

Salute contends that Siminski's causes of action against her are barred by the three-year statute of limitations in section 338, subdivision (d) or precluded by Siminski's settlement with PennyMac. We disagree on both points.

### I. Statute of Limitations

#### A. Legal Principles

Statutes of limitations "prescribe the periods beyond which a plaintiff may not bring a cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).) The relevant statute of limitations in this case is section 338, subdivision (d),

9

which prescribes a three-year statute of limitations for causes of action "for relief on the ground of fraud or mistake."

Statutes of limitation begin to run when a cause of action "accrues," or when all the elements of the cause of action are complete. (*Fox*, *supra*, 35 Cal.4th at p. 806.) "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Id.* at p. 807.) The discovery rule is codified within the text of section 338, subdivision (d): "The cause of action in that case is deemed not to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (§ 338, subd. (d).)

The discovery rule "delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807.) A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for the elements of the cause of action. (*Ibid.*) Thus, "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Ibid.*) To encourage the diligent pursuit of claims, "plaintiffs are charged with presumptive knowledge of an injury" and are "required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at p. 808.) To obtain the benefit of the discovery rule, a plaintiff must demonstrate that "despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Id.* at p. 809.)

On appeal from a judgment based on a statement of decision following a bench trial, we review questions of law de novo and questions of fact for substantial evidence. (*Pearce v. Briggs* (2021) 68 Cal.App.5th 466, 473.) "Resolution of a statute of limitations issue is normally a question of fact." (*Id.* at p. 474.) Accordingly, "'[t]he trial court's finding on the accrual of a cause of action for statute of limitations is upheld on appeal if supported by substantial evidence.'" (*Ibid.*)

### B.    Additional Background

The trial court concluded that the 2009 grant deed was voidable "due to Salute's undue influence, misrepresentations, and other improper actions in manipulating Siminski to sign." The court also concluded that "Salute's fraudulent concealment of the true facts is a good answer to the defense of the statute of limitations." It found "as a factual matter that Siminski did not discover Salute's fraud until 2016," and that "the truth was not reasonably discoverable by Siminski until her mother filed the partition action in 2016." It explained, "[r]egardless of what names appeared on the various grant deeds and deeds of trust, until Salute filed her partition lawsuit in 2016, Siminski had no reason to investigate and no notice that anything was amiss." Moreover, it found that "any documents that might have been sent to Siminski by a financial institution were intercepted by Plaintiff Salute, who exercised absolute control over the mail."

The court rejected Salute's contention that Siminski "should have gone to the registrar's office or sought to obtain information as to title," finding that Siminski "is neither a real estate professional nor an attorney, nor a person purchasing a home who might look into title. She had been manipulated and emotionally abused for years by Salute, and she loved and

11

trusted her mother.  A person of Siminski's age and in Siminski's position would not reasonably be expected to conduct the type of investigation suggested by Salute. And even if Siminski had done so, perhaps by filing a request for documents, Salute would have intercepted the documents."  The court added, "Siminski should not suffer, and Salute should not benefit, where the circumstances of Siminski's ongoing ignorance were created and maintained by Salute's wrongdoing."  The court "emphasize[d] that the fraud in this case is not limited to irregularities in the recorded deeds.  It is also the long-term misrepresentation by Salute of the terms of James Siminski's will and probate proceedings. . . .  Under the unique circumstances of this case, the Court finds Siminski had neither actual nor constructive notice of the fraud until 2016."

### C. Analysis

Salute argues that "the evidence is undeniable, even as a matter of law, that Ms. Siminski was on notice of the 2009 Grant Deed in 2009 and the 2010 Deed of Trust in 2010."  She points to Siminski's signing of the 2009 grant deed and some documents related to the 2010 deed of trust, and the testimony of a notary and a mortgage broker who claimed they explained the documents to Siminski.  She also points out that both the grant deed and deed of trust were recorded, which she claims put Siminski "on inquiry notice that there were issues being raised regarding the Property," "even assuming Ms. Salute defrauded Ms. Siminski into signing the 2010 Loan documents and the 2010 Deed of Trust (which Ms. Salute does not concede)."

Substantial evidence amply supports the trial court's conclusion that Siminski did not discover and reasonably could not have discovered Salute's malfeasance until this suit was filed

12

in 2016. From the time Siminski inherited the home as a small child, Salute falsely told her that the home belonged to Salute. Salute also prevented Siminski from having contact with family members who may have told her otherwise. Salute misrepresented the nature of the documents she asked Siminski to sign, and the trial court found the mortgage broker who testified about the circumstances of the signing to be "not an entirely objective witness" due to her friendship with Salute's son and embrace of Salute in the courtroom.

Salute repeatedly emphasizes that Siminski was a legal adult who was mentally competent when she signed the 2009 grant deed and the 2010 loan documents. She also asserts that Siminski "has provided no evidence (because there is none) that she was legally incompetent at the time she signed the documents." Therefore, she contends, Siminski "is held to have legally known and understood what she was signing when she signed the documents, and . . . her cause of action for cancellation of instrument must fail."

We agree with Salute that "it is well established that a party who signs a document is presumed to have read it and to understand its contents." (*Baker v. Italian Maple Holdings* (2017) 13 Cal.App.5th 1152, 1162, fn. 6.) However, it is equally well established that this presumption is rebuttable. (See *ibid.*) Salute does not cite any authority for the proposition that the presumption may be rebutted only by evidence showing a formal declaration of incompetence.[3] One of the cases she does cite,

---

[3] She also does not acknowledge that competency has long been a distinct issue from fraud. (See, e.g., *In re Benton's Estate* (1901) 131 Cal. 472, 475.) Competent adults may nevertheless fall victim to fraud, undue influence, or misrepresentations.

*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513 (*Parsons*), undermines this notion.

In *Parsons*, the court observed that the discovery rule "'is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. . . . Even when the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend.'" (*Parsons*, *supra*, 31 Cal.App.4th at p. 1526.) *Parsons* further recognized that "'courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule,'" and that "'there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance.'" (*Ibid.*) Applying these principles at the demurrer stage, *Parsons* held the discovery rule applied where the plaintiff alleged that the defendant concealed a key fact from her, used false representations to do so, and it was not unreasonable under the circumstances for the plaintiff to trust the defendant's representations. (See *id.* at p. 1527.)

Here, the trial court found that Siminski rebutted the presumption by proving she "had not, and reasonably could not, discover the fraud, which includes Salute's hiding from Cameron Siminski the terms of James Siminski's will." It found that "the circumstances of Siminski's ongoing ignorance were created and maintained by Salute's wrongdoing"; that Siminski "credibly testified that in 2009-2010, as a teenager, she had no idea what a grant deed, deed of trust, or mortgage was"; and Siminski "had

14

recently attempted suicide, had no access to mail, and relied completely on Salute." It also found there was a power imbalance between Salute and Siminski, as Salute had "manipulated and emotionally abused" Siminski for years and yet Siminski "loved and trusted her mother." These circumstances and findings amply support application of the discovery rule, particularly since they were predominantly of Salute's creation. They also demonstrate that the court did not rely exclusively or even primarily on Siminski's age, as Salute repeatedly suggests.

Salute nevertheless contends that Siminski should have been on inquiry notice after signing the grant deed and documents related to the deed of trust, because they were recorded with the county recorder. She points to Civil Code section 1213, which states, "Every conveyance of real property . . . acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . ." (Civ. Code, § 1213.) A deed of trust is a "conveyance" for purposes of Civil Code section 1213. (Civ. Code, § 1215.) However, Siminski was not a "subsequent purchaser or mortgagee" of the property. She was instead an unknowing gifter and mortgagor. Salute asserts that Civil Code section 1213 applies generally to "a party in interest," but the single case she cites for that proposition does not support it. (See *Cady v. Purser* (1901) 131 Cal. 552, 555.) Salute also has no answer to the trial court's well-supported factual finding that she interfered with Siminski's receipt of mail and "would have intercepted" any documents Siminski attempted to obtain through reasonable inquiry.

In short, Salute has failed to carry her burden of showing that the trial court committed reversible error in finding Siminski's claims timely under the delayed discovery rule.

## II. Settlement and Stipulated Judgment

Salute alternatively contends that Siminski's acceptance of PennyMac's section 998 offer and resultant stipulated judgment against Siminski estop her from making "any further arguments that the 2010 Deed of Trust was actually procured through fraud or any other means," because the judgment constitutes a "finding on the merits that the deed of trust is valid and enforceable." In her view, if the deed of trust is valid, "the vesting of the title, i.e., that the title was held in 2010 in joint tenancy by both Ms. Salute and Ms. Siminski, is as valid and enforceable as is the amount owed, the interest rate, and the maturity date," and therefore the 2009 grant deed establishing that joint tenancy must be valid. Salute argues that Siminski impermissibly "attempts to have it both ways," as she "judicially admits through her Stipulated Judgment that as to PennyMac the 2010 Deed of Trust is valid and enforceable but as to Ms. Salute it is not. This was not the Judgment entered, this was not the Judgment to which the parties stipulated, and this is not the plain reading of the language included in the Stipulated Judgment." Siminski responds that the "998 Offer is not a judicial admission of the validity of the 2010 Deed of Trust," and even if it were, "title to the property was still held by Ms. Siminski and Ms. Salute, and the enforceability of the 2009 Grant Deed was the primary issue to be determined at trial." She asserts that the settlement and judgment were not "an admission that the 2009 Grant Deed remained in effect even after the trial."

16

We conclude that Salute has not demonstrated that the settlement and judgment between Siminski and PennyMac preclude the trial court's ruling that the 2009 grant deed was voidable and void.

## A. Additional Background

As described above, Siminski and PennyMac settled their claims against one another on the first day of trial. The court entered judgment in accordance with that settlement on October 21, 2022. The judgment, cited nowhere in Salute's briefing, provides that "Judgment is entered against Siminski and in favor of PennyMac on PennyMac's complaint in intervention . . . and the loan in the original principal amount of $405,000.00 secured by the deed of trust recorded against the [home] . . . constitutes a valid, first position lien against the Property." It further provides that "PennyMac is to pay Siminski a total of $260,000.00," that "[j]udgment of dismissal is entered in PennyMac's favor and against Siminski on Siminski's first amended cross-complaint," and that "[e]ach party shall bear its own respective attorneys' fees and costs." The order of dismissal concerning Salute states only that PennyMac's action is dismissed with prejudice as to her.

After trial, Salute argued that the trial court "must draw a legal conclusion that 'all parts of the 2010 deed of trust, including vesting and title, are valid and enforceable," such that Salute would necessarily prevail on her claims. The trial court rejected this argument in its statement of decision, reasoning that trial would have been entirely unnecessary "if the Court adopted Salute's rationale," because the "only reason" trial "went forward after the acceptance of the 998 offer was to determine whether the 2009 Grant Deed transfer was void or voidable." The trial

17

court observed that "Siminski and PennyMac entered into a compromise agreement that mitigated each of their risks in going forward." Specifically, "PennyMac risked losing its investment entirely if the 2010 deed of trust was declared void by the Court," and accordingly "agreed to pay $260,000 to Siminski in exchange for Siminski agreeing that the loan would be secured by the . . . property regardless of the outcome of the case." Likewise, "Siminski also wanted to mitigate her risk" in light of the court's indication at summary judgment "that an equitable lien in PennyMac's favor was reasonably likely, although not certain." The court concluded that "[n]o one interpreted the offer and acceptance of the 998 offer in the manner Salute belatedly requests," and that "Siminski never intended, nor does the 998 acceptance document state, that she was conceding to the validity of the wrongfully-obtained 2009 Grant Deed, particularly when it was abundantly clear that she was not."

## B. Legal Principles and Analysis

"In a stipulated judgment, or consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment." (*California State Automobile Association Inter-Insurance Bureau v. Superior Court* (1990) 50 Cal.3d 658, 663.) A stipulated judgment "may properly be given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms." (*Id.* at p. 664; see also *Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1194 ["Findings on issues that are 'actually and necessarily included' in a judgment may be given collateral estoppel effect, regardless of whether the judgment is the result of a stipulation."].) Collateral estoppel, for which the preferred term is now issue preclusion, "prevents 'relitigation of previously

18

decided issues.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 326-327.)  "It applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Id.* at p. 327.)  The determination whether collateral estoppel or issue preclusion applies is a question of law that we review de novo.  (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 598, 618.)

To the extent the court's ruling indicates a refusal to apply issue preclusion, we find no error.  First, and most fundamentally, issue preclusion could not apply because there was no subsequent suit. The litigation among PennyMac, Siminski, and Salute was part and parcel of the same proceedings.  Second, the 2009 grant deed and 2010 deed of trust are two distinct transactions, not an identical issue. Resolution of issues concerning the 2010 deed of trust did not necessarily resolve issues concerning the validity of the 2009 grant deed.  Indeed, the settlement and judgment said nothing about the 2009 grant deed, and, as discussed below, no party behaved as though they did.  Regardless of the validity of the 2009 grant deed, Siminski held title to the property and was potentially on the hook to PennyMac for the entirety of the loan obligation.  As the trial court recognized, the settlement mitigated both Siminski's and PennyMac's risks in this regard.

Third, as Siminski argues and the trial court concluded, the record gives no indication that any party to the action, including Salute, intended the judgment to resolve issues concerning the 2009 grant deed.  To the contrary, litigation involving the 2009 grant deed continued immediately following the settlement, and there is no indication in the record that Salute made any

19

argument regarding issue preclusion until after the trial was complete. Issue preclusion may be waived or forfeited if not proved in the trial court. (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332.) And "'[w]here a party joins issue on a question previously litigated or voluntarily opens an investigation of matters which he might claim to be concluded by a prior judgment, he will be held to have waived his right to assert the benefit of the former adjudication and the case will be determined without regard therefor.'" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89, quoting *Dillard v. McKnight* (1949) 34 Cal.3d 209, 219.) Although Salute raised the issue, she did not do so until the multi-day bench trial regarding the 2009 grant deed had concluded. The trial court did not err by rejecting what it characterized as Salute's "belated" request to interpret the settlement as precluding the need for trial.

Salute also argues that the settlement and judgment amount to a "judicial admission" by Siminski that the deed of trust is enforceable for all purposes. "A judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.) Here, the settlement and judgment provide only that the deed of trust "constitutes a valid, first position lien against the Property." This is not on its face an admission or concession that the property rightfully belonged to both Salute and Siminski or that the 2009 grant deed creating the joint tenancy was valid. It removed only consideration of the 2010 deed of trust from the case; Salute and Siminski subsequently spent days trying the validity of the 2009 grant deed. Salute appears to assert that the deed of trust vested

title to the property in both herself and Siminski independently of the grant deed, but she cites no authority for that proposition. We accordingly do not consider this point further.  (See *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

Finally, Salute cites *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793 in support of a contention that PennyMac's dismissal of its intervenor complaint with prejudice as to her is "a finding on the merits in Ms. Salute's favor." However, she fails to develop this argument beyond a single sentence repeated multiple times.  "'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived.'"  (*Holden v. City of San Diego, supra*, 43 Cal.App.5th at p. 418.)

## DISPOSITION

The judgment is affirmed.  Siminski may recover her costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.


We concur:



MORI, J.



TAMZARIAN, J.

21